PEOPLE v DYKHOUSE

Docket No. 68246. Argued May 4, 1983 (Calendar No. 8).—Decided
    March 2, 1984.

Richard G. Dykhouse was convicted by a jury in the Kent Circuit
    Court, Roman J. Snow, J., of first-degree murder and assault
    with intent to commit murder. The Court of Appeals, R. B.
    Burns, P.J., and Allen and Gillespie, JJ., reversed in an unpub-
    lished opinion per curiam on the ground that the instructions
    to the jury on murder were erroneous, and remanded the case
    for entry of a judgment of conviction of second-degree murder
    (Docket No. 50984). The people appeal.

    In an opinion by Justice Brickley, joined by Chief Justice
    Williams and Justices Ryan and Boyle, the Supreme Court
    held:

    Instructions to the jury which stated that first- and second-
    degree murder are the same crime except that first-degree
    murder has additional elements and that all of the elements of
    second-degree murder are necessary to prove first-degree mur-
    der, but that only an intent to kill would suffice to convict the
    defendant of first-degree premeditated murder, although some-
    what imprecise, were not prejudicial to the defendant when
    viewed in their entirety.

    1. Murder at the common law is equivalent to statutory
    second-degree murder. The crime of second-degree murder is
    committed only if the actor entertains the intent to kill, the
    intent to inflict great bodily harm, or the intent to create a
    very high risk of death or great bodily harm with the knowl-
    edge that death or great bodily harm is the probable result.
    First-degree premeditated murder is committed only if the
    actor entertains the deliberate and premeditated intent to kill.

    2. In this case, the instructions to the jury indicated that an

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 525 *et seq.*
[2] 40 Am Jur 2d, Homicide §§ 45, 47, 53.
[3, 6, 8] 40 Am Jur 2d, Homicide § 41 *et seq.*
[4] 40 Am Jur 2d, Homicide § 53.
[5] 40 Am Jur 2d, Homicide §§ 45, 46, 48, 53.
[7] 40 Am Jur 2d, Homicide § 45 *et seq.*
[9, 10] 40 Am Jur 2d, Homicide § 52.

intent to create a high risk of death would suffice to support a conviction of second-degree murder and that first- and second-degree murder were the same crime except that the additional element of a deliberate and premeditated intent to kill was necessary to support a conviction of first-degree murder; although not perfect, they were not prejudicial to the defendant. Where the particular facts of a case indicate that the defendant could have had an intent to kill and another intent which would support a conviction of second-degree murder, an instruction which separately defines first- and second-degree murder is advisable.

Reversed and remanded.

Justice Cavanagh, joined by Justices Kavanagh and Levin, dissented. They wrote that the instructions permitted the jury to convict the defendant of first-degree murder upon finding that he intended to inflict great bodily harm or to create a very high risk of death with knowledge that the act probably would cause death or great bodily harm and were erroneous. The possible merit in other issues raised by the defendant but not decided by the Court of Appeals should be considered by that Court.

1. Michigan statutes proscribing murder do not define murder, but merely classify types of murder by degree. The definition of murder is derived from the common law. Common-law murder, as refined by case law, is what has come to be known as second-degree murder. The elements of common-law murder are: a death caused by an act of the defendant absent circumstances of justification, excuse, or mitigation, done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm.

2. It is not entirely accurate to describe first-degree premeditated murder as second-degree murder with the additional elements of premeditation and deliberation. The element of intent of second-degree murder varies from that of first-degree murder. The intent to commit second-degree murder may consist of an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm. The intent required to commit first-degree premeditated murder can only consist of an intent to kill. In this case, the instructions to the jury blurred the distinction between first- and second-degree murder, permitting the jury to convict the defendant on the premise that he intended to inflict

great bodily harm or to create a very high risk of death with knowledge that the act would probably cause death or great bodily harm.

3. Because the central issue during trial was the defendant's intent at the time of the crimes and because both parties presented substantial evidence on the issue, the error occasioned by the instructions to the jury was not harmless beyond a reasonable doubt. Because the possible merit in the defendant's other issues might render remand for entry of a conviction of second-degree murder inappropriate and necessitate a new trial, the remedy cannot be sanctioned. Rather, the case should be remanded to the Court of Appeals for plenary consideration of the remaining issues.

Justice Boyle concurred in the majority opinion, but also wrote separately to respond to arguments made in the dissenting opinion. It is not error to instruct a jury that first-degree murder is second-degree murder plus premeditation and deliberation. The instructions in this case did not misstate the law. Murder is a homicide committed with malice. The first-degree murder statute has no application until it is shown that a homicide is murder, and thus the trial court must instruct the jury on common-law murder. All of the elements of second-degree murder are elements of first-degree murder, and where first-degree murder is charged, the trial court must instruct on second-degree murder *sua sponte* because it is always a lesser included offense. On the basis of the instructions, no reasonable juror could have convicted the defendant of first-degree premeditated murder without finding that he intended to cause the death of his wife.

1. While it is correct to state that first-degree premeditated murder cannot be based on less morally culpable intent than the intent to kill, it is incorrect to state that the intent to kill required for second-degree murder is different than that required for first-degree murder. Second-degree murder does not require an intent to kill; rather, it requires a mental state which can be met by alternative states of mind, only one of which is an intent to kill, but where intent to kill is the foundation for a conviction of second-degree murder, it is not a different intent than that required for first-degree murder. It is not the intent to kill which distinguishes first- from second-degree murder, it is the wilful premeditation and deliberation.

2. Common-law murder which is committed during the commission of or attempt to commit a felony enumerated in the first-degree murder statute is first-degree murder; the intent required is *either* an intention to kill, or an intention to do

great bodily harm, or the wanton and wilful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm. Thus, as with second-degree murder, there are several alternative mental states which support a conviction of first-degree murder despite the absence of a specific intent to kill. However, the concepts of wilfulness, deliberation, and premeditation in the context of first-degree murder necessarily imply a specific intent to kill. It is the intent to kill which must be premeditated, and the additional element of premeditation and deliberation that requires a specific intent to kill for first-degree murder and excludes convictions based only upon wilful and wanton misconduct or other morally culpable conduct which would support a conviction of second-degree murder. Thus it is correct to say that first-degree murder is second-degree murder plus premeditation.

3. The instructions given in this case did not allow the defendant to be convicted of first-degree premeditated murder without requiring that the jury find that the defendant intended to cause the death of the victim. The necessary link between premeditation and the intent to kill was clearly present in the instructions. Because of the thrust of the defense in this case, it is simply fanciful to conclude that the jury's verdict was influenced by any confusion concerning the different types of intent required for first- or second-degree murder. The defendant made no effort to show that he was not guilty of first-degree murder because he intended only to inflict great bodily harm or that his conduct could only be characterized as wanton recklessness. Rather, he attempted to convince the jury that he did not have the requisite intent to kill because he was too drunk or deranged to have formed the intent. He also argued that the presence of legal provocation reduced his conduct to voluntary manslaughter, but did not seek to show that he had less than a specific intent to kill. None of these theories is affected by the isolated potential error in the court's instructions.

## OPINION OF THE COURT

1. HOMICIDE — MURDER — INSTRUCTIONS TO JURY.

Instructions to the jury which stated that first- and second-degree murder are the same crime except that first-degree murder has additional elements and that all of the elements of second-degree murder are necessary to prove first-degree murder, but that only an intent to kill would suffice to convict the defendant of first-degree premeditated murder, although somewhat

imprecise, were not prejudicial to the defendant when viewed in their entirety (MCL 750.316, 750.317; MSA 28.548, 28.549).

DISSENTING OPINION BY CAVANAGH, J.

2. HOMICIDE — FIRST-DEGREE MURDER — INSTRUCTIONS TO JURY.

Instructions to a jury which would have permitted the jury to convict a defendant of first-degree murder upon finding that he intended to inflict great bodily harm or to create a very high risk of death with knowledge that the act probably would cause death or great bodily harm were erroneous (MCL 750.316; MSA 28.548).

3. HOMICIDE — MURDER — COMMON LAW.

Murder, as defined by case law, is derived from the common law; the statutes proscribing murder do not define murder, but merely classify types of murder by degree (MCL 750.316, 750.317; MSA 28.548, 28.549).

4. HOMICIDE — SECOND-DEGREE MURDER — COMMON LAW.

Common-law murder, as refined by case law, has come to be known as second-degree murder; its elements are: a death caused by an act of the defendant absent circumstances of justification, excuse, or mitigation, done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm (MCL 750.317; MSA 28.549).

5. HOMICIDE — FIRST-DEGREE MURDER — INTENT.

First-degree murder is not merely second-degree murder with the additional elements of premeditation and deliberation; the element of intent necessary for second-degree murder may consist of an intent to kill, to inflict great bodily harm, or to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm, whereas the intent required for first-degree premeditated murder can only consist of an intent to kill (MCL 750.316, 750.317; MSA 28.548, 28.549).

CONCURRING OPINION BY BOYLE, J.

6. HOMICIDE — SECOND-DEGREE MURDER — INTENT.

Second-degree murder does not require an intent to kill; rather, it requires a mental state which can be met by alternative states

*of mind, only one of which is an intent to kill, but where intent to kill is the foundation for a conviction of second-degree murder, it is not a different intent than that required for first-degree murder (MCL 750.316, 750.317; MSA 28.548, 28.549).*

7. HOMICIDE — FIRST-DEGREE MURDER — ELEMENTS — INTENT.

*Common-law murder committed in the course of an enumerated felony is first-degree murder, and the intent required is either an intention to kill, or an intention to do great bodily harm, or the wanton and wilful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm; thus there are several alternative mental states which can support a conviction of first-degree murder (MCL 750.316, 750.317; MSA 28.548, 28.549).*

8. HOMICIDE — FIRST-DEGREE MURDER — ELEMENTS OF CRIME — INTENT.

*It is not the intent to kill which distinguishes first- from second-degree murder, it is the wilful premeditation and deliberation (MCL 750.316, 750.317; MSA 28.548, 28.549).*

9. HOMICIDE — FIRST-DEGREE MURDER — ELEMENTS — PREMEDITATION — SPECIFIC INTENT.

*The specific intent to kill is not an additional element of premeditated first-degree murder distinguishing it from second-degree murder; rather, premeditation and deliberation is the additional element (MCL 750.316, 750.317; MSA 28.548, 28.549).*

10. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — SPECIFIC INTENT.

*A conviction of first-degree premeditated murder necessarily requires a finding that the defendant possessed the specific intent to cause death, because the concepts of wilfulness, deliberation, and premeditation in this context necessarily imply a specific intent to kill (MCL 750.316, 750.317; MSA 28.548, 28.549).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, *Carol S. Irons,* Chief Appellate Attorney, and *Barbara J. Crozier,* Assistant Prosecuting Attorney, for the people.

*Varnum, Riddering, Wierengo & Christenson* (by *Dennis C. Kolenda)* for the defendant.

BRICKLEY, J. This case requires us to review the propriety of the first-degree murder instructions in CJI 16:2:01.[1] We hold that those instructions, although somewhat imprecise, do not contain error prejudicial to the defendant.

Defendant was convicted of first-degree premeditated murder, MCL 750.316; MSA 28.548, and assault with intent to commit murder, MCL 750.83; MSA 28.278. He was sentenced to terms of life imprisonment and thirty to sixty years imprisonment, respectively. These convictions arose out of events on February 25, 1979, when defendant, after an evening of heavy drinking, returned home to find that his wife was not there. Armed with a rifle, he went to the home of his wife's paramour. He found his wife crouching in a closet and killed her with a single shot through the neck. He seriously wounded his wife's paramour with a shot in the back.

In the Court of Appeals, defendant, *inter alia,* argued that the trial court's jury instructions failed to adequately apprise the jury that the defendant must have had a specific intent to kill to be found guilty of first-degree murder. On the authority of *People v Milton,* 81 Mich App 515; 265 NW2d 397 (1978), *modified* 403 Mich 821 (1978), the Court of Appeals agreed with the defendant and reduced his conviction of first-degree murder to second-degree murder. We granted the prosecutor's application for leave to appeal. Defendant's cross-application for leave to appeal was ordered held in abeyance pending decision on the issue raised by the prosecutor. 414 Mich 867 (1982).

---

[1] Although this Court has "urged" the use of the Criminal Jury Instructions, Administrative Order 1977-1, 399 Mich lxxii, our urging in no way indicates approval of any particular instruction. Trial judges should not hesitate to modify or disregard the CJI when presented with a clearer or more accurate instruction.

What was known at common law as the crime of murder, and what is now known under our statutory scheme as the crime of second-degree murder, MCL 750.317; MSA 28.549, is committed only if the actor entertains one of three possible intents: the intent to kill, the intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *People v Aaron,* 409 Mich 672, 713-714; 299 NW2d 304 (1980). In contrast, the statutory crime of first-degree premeditated murder is committed only if the defendant entertains the intent to kill. *People v Garcia,* 398 Mich 250, 259; 247 NW2d 547 (1976). In addition, the intent to kill in first-degree premeditated murder must be deliberate and premeditated. *People v Hansen,* 368 Mich 344, 351; 118 NW2d 422 (1962).[2]

In *Milton, supra,* p 518, the defendant's conviction of first-degree premeditated murder was reversed because the trial court instructed that first-degree premeditated murder could be committed if the defendant "either intended to kill the deceased or * * * consciously created a very high degree of

---

[2] MCL 750.316; MSA 28.548 provides:

"Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life."

Of course, first-degree murder can be committed notwithstanding the lack of premeditation and deliberation. The murder of another during the commission of one of the crimes enumerated in MCL 750.316; MSA 28.548 also is first-degree murder. *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980). This so-called felony-murder portion of our first-degree murder statute has no application in the present case. We used the phrase "first-degree premeditated murder" in this opinion to make clear that we are not dealing with the so-called felony-murder portion of the statute.

risk of death to another with knowledge of its probable consequences". Of course, such an instruction is clearly erroneous. A "very high risk of death" intent is insufficient for first-degree premeditated murder. The defendant must have an actual intent to kill.

In the present case, defendant contends, and the Court of Appeals found, that an error similar to that in *Milton* occurred.[3] Here, the trial court's instruction included the phrases, "[f]irst-degree and second-degree murder are the same crime, except that first-degree murder has the additional elements of premeditation and deliberation, that is, the defendant must have premeditated and deliberated his intent to kill" and "[k]eep in mind that all of the elements of second-degree murder are necessary to prove first-degree murder". Defendant argues that because these phrases were included in the instructions the jury could have concluded that a "very high risk of death" intent was sufficient to convict the defendant of first-de-

[3] The Court of Appeals opinion is somewhat cryptic as to the precise ground for reversal. The Court stated:

"The trial judge instructed the jury that in order to find a conviction of murder 'the defendant must have either intended to kill, that is, he must have done the act intending that it result in death or in great and serious bodily injury, or he must have knowingly created a very high risk of death with the knowledge that it probably would cause death.' This instruction was erroneous. *People v Milton,* 81 Mich App 515; 265 NW2d 397 (1978), *modified on other grounds* 403 Mich 821 (1978)."

The instructional language quoted by the Court of Appeals is from the trial court's general instructions on murder and was taken from the then applicable Criminal Jury Instructions. This language, while not incorrect as to second-degree murder, standing alone is insufficient for first-degree murder. The trial court did not suggest that this part of its instructions would support first-degree murder. Even defendant states that this language is "not legally incorrect" as a general definition of murder. We note, however, that defendant did not argue below and does not argue here that the phrase "intended to kill, *that is,* he must have done the act intending that it result in death or in great and serious bodily injury", contaminated the later first-degree murder "intent to kill" language.

gree premeditated murder. Viewing the instructions to the jury in their entirety, as we must, *People v Dye,* 356 Mich 271, 279; 96 NW2d 788 (1959), *cert den* 361 US 935 (1960), we disagree.

The trial court's instructions were taken substantially from CJI 16:2:01:[4]

---

[4] At the time of defendant's trial, CJI 16:2:01 provided:

"(1) The defendant is charged with the crime of murder of the first degree. The law, as it applies to this case, states that all wilful, deliberate and premeditated murder shall be murder of the first degree. The defendant pleads not guilty.

"(2) There are two kinds of murder, first degree and second degree, and you will be instructed as to both. [Murder of either degree is the killing of one person by another with malice. Malice is a term with special meaning in the law. Malice means that the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death, and that he did so under circumstances which did not justify, excuse or lessen the crime.]

"(3) First-degree and second-degree murder are the same crime, except that first-degree murder has the additional elements of premeditation and deliberation; that is, the defendant must have premeditated and deliberated his intent to kill.

"(4) You will first be instructed on murder of the second degree. Keep in mind that all of the elements of second-degree murder are necessary to prove first-degree murder.

"(5) To establish second-degree murder, the prosecution must prove each of these following elements beyond a reasonable doubt:

"(6) First, that the deceased died on or about *[date],* within the [County of _____/City of Detroit].

"(7) Second, that his death was caused by an act of the defendant; that is, that *[name deceased]* died as the result of *[state the alleged act causing death].*

"(8) Third, if you find that the death was caused by the defendant, you must determine whether the defendant is guilty of any crime. The killing of a human being by another may be entirely innocent. It is not the act of killing in itself which makes it a crime, but the state of mind with which it is done.

"(9) A killing is not murder if it is justified, excused or [mitigated/if it occurs under circumstances which make the killing the lesser crime of manslaughter.]

"(10) Fourth, for murder you must find that the defendant consciously and knowingly performed the act which caused death. The defendant must have either intended to kill, that is, he must have done the act intending that it result in death or in great and serious bodily injury, or he must have knowingly created a very high risk of death with the knowledge that it probably would cause death.

"(11) The degree of risk for murder must be so reckless and

wrongful as to amount to a criminal purpose aimed against a person's life, and the defendant must have been conscious of that risk.

"(12) For murder of the first degree, the prosecutor must prove beyond a reasonable doubt the four elements of second-degree murder which have been described to you. In addition, he must prove beyond a reasonable doubt the fifth element, which raises the crime to first-degree murder.

"(13) Fifth, that the death was the wilful result of a premeditated, deliberate intent to kill.

"(14) Premeditated means thought out beforehand or designed or planned. [The killing must be the result of real and substantial reflection.]

"(15) Deliberate means that the defendant must have considered the pros and cons of that design and have measured and chosen his actions. The intent must be formed by a mind that is free from undue excitement. This excludes acts done on a sudden impulse without reflection [or as a result of a sudden fight].

"(16) Wilful means intentional.

"(17) For first-degree murder, there must be such a lapse of time as would give the mind time to think about the purpose and intent of the killing. The law does not specify the length of that period, and it will vary with individuals and circumstances. The test is not the duration of time but the extent of the reflection. There must be sufficient time to afford a reasonable man time to subject his actions to a second look.

"(18) If you find the defendant guilty of murder, it is your duty to state in your verdict whether he is guilty of murder of the first degree or guilty of the lesser offense of murder of the second degree."

CJI 16:2:01 has since been amended to read:

"(1) The defendant is charged with the crime of murder of the first degree. The law, as it applies to this case, states that all wilful, deliberate and premeditated murder shall be murder of the first degree. The defendant pleads not guilty.

"(2) There are two kinds of murder, first degree and second degree, and you will be instructed as to both. Murder is the killing of one person by another, with a certain mental element. For murder, the defendant must have intended to kill, have intended to do great bodily harm, or have wilfully and wantonly disregarded the strong and plain likelihood that death would result, and he must have done so under circumstances which did not justify, excuse or lessen the crime.

"(3) You will be first instructed on murder of the second degree. Keep in mind that all of the elements of second-degree murder are necessary to prove first-degree murder.

"(4) To establish second-degree murder, the prosecution must prove each of these following elements beyond a reasonable doubt:

"(5) First, that the deceased died on or about [date], within the [County of _____/City of Detroit].

"(6) Second, that his death was caused by an act of the defendant; that is, that [name deceased] died as the result of [state the alleged act causing death].

"The defendant is charged in Count I with the crime of murder in the first degree. The law as it applies to this case states that all wilful, deliberate, and premeditated murder shall be murder of the first degree. The defendant pleads not guilty.

"There are two kinds of murder, first-degree and second-degree, and you will be instructed as to both. Murder of either degree is the killing of one person by another with malice. Malice is a term with special meaning in the law. Malice means that the defendant intended to kill or that he knowingly created a very

"(7) Third, if you find that the death was caused by the defendant, you must determine whether the defendant is guilty of any crime. The killing of a human being by another may be entirely innocent. It is not the act of killing in itself which makes it a crime, but the state of mind with which it is done.

"(8) A killing is not murder if it is justified or excused. [Neither is it murder if it occurs under circumstances which make the killing the lesser crime of manslaughter [or *(some other lesser included offense)].]*

"(9) Fourth, for murder you must find that the defendant intended to kill, that he intended to do great bodily harm, or that he committed a wanton and wilful act the natural tendency of which was to cause death or great bodily harm. There must be a strong and plain likelihood that death or serious bodily harm will result, and the defendant must have wilfully and wantonly disregarded the knowledge of the possible consequences of death or serious injury.

"(10) In this case the prosecution is charging first-degree murder. To establish first-degree murder the prosecution must prove each of the following elements beyond a reasonable doubt:

"(11) That the defendant intended to kill *[name deceased]*;

"(12) That the intent to kill was premeditated. Premeditated means thought out beforehand or designed or planned;

"(13) That the killing was deliberate. Deliberate means that the defendant must have considered the pros and cons of that design and have measured and chosen his actions. The intent must be formed by a mind that is free from undue excitement. This excludes acts done on a sudden impulse without reflection [or as a result of a sudden fight].

"(14) For first-degree murder, the killing must be the result of real and substantial reflection. There must be such a lapse of time as would give the mind time to think about the purpose and intent of the killing. The law does not specify the length of that period, and it will vary with individuals and circumstances. The test is not the duration of time but the extent of the reflection. There must be sufficient time to afford a reasonable man time to subject his actions to a second look.

"(15) If you find the defendant guilty of murder, it is your duty to state in your verdict whether he is guilty of murder of the first degree or guilty of the lesser offense of murder of the second degree."

high risk of death with knowledge that it probably would result in death, and that he did so under circumstances which did not lessen the crime.

"First-degree and second-degree murder are the same crime, except that first-degree murder has the additional elements of premeditation and deliberation, that is, *defendant must have premeditated and deliberated his intent to kill.*

"You will be instructed on murder of the second degree. Keep in mind that all of the elements of second-degree murder are necessary to prove first-degree murder.

"To establish second-degree murder, the prosecution must prove each of the following elements beyond a reasonable doubt:

"First, that the deceased, Judy Ann Dykhouse, died on or about February 25, 1979, within the County of Kent and City of Grand Rapids.

"Second, that her death was caused by an act of the defendant, that is, that Judy Ann Dykhouse died as the result of the defendant shooting her with a rifle.

"Third, if you find that the death was caused by the defendant, you must determine whether the defendant is guilty of any crime. The killing of a human being by another may be entirely innocent. It is not the act of killing in itself which makes it a crime, but the state of mind with which it is done.

"A killing is not murder if it occurs under circumstances which make the killing the lesser crime of manslaughter.

"Fourth, for murder you must find that the defendant consciously and knowingly performed the act which caused death. The defendant must have either intended to kill, that is, he must have done the act intending that it result in death or in great and serious bodily injury, or he must have knowingly created a very high risk of death with the knowledge that it probably would cause death.

"The degree of risk for murder must be so reckless and wrongful as to amount to a criminal purpose aimed against a person's life, and the defendant must have been conscious of that risk.

"For murder of the first degree, the prosecutor must prove beyond a reasonable doubt the four elements of second-degree murder which have been described to you. *In addition, he must prove beyond a reasonable doubt the fifth element, which raises the crime to first-degree murder. That fifth element is that the death was the wilful result of a premeditated, deliberate intent to kill.*

"Premeditated means thought out beforehand or designed or planned. The killing must be the result of real and substantial reflection.

"Deliberate means that the defendant must have considered the pros and cons of that design and have measured and chosen his actions. The intent must be formed by a mind that is free from undue excitement. This excludes acts done on a sudden impulse without reflection.

"*Wilful means the intent to take a life.*

"For first-degree murder, there must be such a lapse of time as would give the mind time to think about the purpose and intent of the killing. The law does not specify the length of that period, and it will vary with individuals and circumstances. The test is not the duration of time, but the extent of the reflection. There must be sufficient time to afford a reasonable man time to subject his actions to a second look.

"If you find the defendant guilty of murder, it is your duty to state in your verdict whether he is guilty of murder of the first degree or guilty of the lesser offense of murder of the second degree.

"Now, when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. *Intent is a decision of the mind to knowingly do an act with a conscious, fully-formed objective of accomplishing a certain specific result. There can be no crime of first-degree murder under our law where there is no intent to kill,* and the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant, at the time of doing the alleged act, had that wrongful intent."[5] (Emphasis added.)

---

[5] This paragraph is taken substantially from CJI 3:1:16.

Viewing the above instructions as a whole, we find no error. The jury was specifically instructed that only an intent to kill would suffice to convict the defendant of first-degree premeditated murder. The jury was so instructed four times. Even a very literal view of the precise language complained of reveals no error harmful to the defendant. Unlike the instructions in *Milton,* the instructions here did not tell the jury that the defendant could be found guilty of first-degree premeditated murder merely on finding a "very high risk of death" intent. The instructions in the present case did inform the jury that a "very high risk of death" intent sufficed for second-degree murder and that second-degree murder and first-degree premeditated murder "are the same crime, except that first-degree [premeditated] murder has * * * additional elements". But those additional elements, the jury was informed, were a premeditated and a deliberate intent to kill. If, in fact, the jury literally followed the trial court's instructions and found that defendant entertained a "very high risk of death" intent such that he could be found guilty of second-degree murder, it would still have to find a specific intent to kill before concluding that first-degree murder had been committed. Defendant certainly cannot complain if the instructions given allowed the jury to conclude that he entertained both the intent to create a high risk of death and the specific intent to kill.

That is not to say that the instructions given in this case, and by necessary implication CJI 16:2:01, are perfect. These instructions risk creating the problem in *Milton* unless very specific directions are given to make clear that first-degree premeditated murder requires an actual intent to kill. Indeed, when the particular facts of a case indicate

that the defendant could have possessed both an intent to kill and another of the possible intents for second-degree murder, an instruction which separately defines each crime is advisable.

Viewed in their entirety, the instructions before us are not erroneous. We, therefore, reverse the decision of the Court of Appeals. The cause is remanded to the Court of Appeals for plenary consideration of the issues raised in defendant's cross-application for leave to appeal to this Court.

Reversed and remanded.

WILLIAMS, C.J., and RYAN and BOYLE, JJ., concurred with BRICKLEY, J.

CAVANAGH, J. Defendant was convicted by a jury of first-degree premeditated murder, MCL 750.316; MSA 28.548, and of assault with intent to commit murder, MCL 750.83; MSA 28.278. He was concurrently sentenced to the statutorily mandated term of life imprisonment for the murder conviction and to a prison term of from 30 to 60 years for the assault conviction. The Court of Appeals reversed defendant's conviction of murder,[1] and we granted the prosecution's application for leave to appeal[2] in order to examine the jury instructions regarding first-degree and second-degree murder.

I

In the spring of 1978, defendant's nine-year marriage began to disintegrate. At that time, his wife began frequent evening sojourns to neighborhood taverns without her husband. Shortly thereafter, she began an extramarital affair. Defendant

[1] Unpublished opinion per curiam of the Court of Appeals, decided September 15, 1981 (Docket No. 50984).

[2] 414 Mich 867 (1982).

learned of the affair, and he and his wife attempted a reconciliation. Nevertheless, while continuing to live with defendant, she also continued her affair. On February 24 and 25, 1979, the climactic events occurred which brought defendant's marriage to a tragic conclusion.

After an evening of extensive drinking with his wife's relatives, defendant returned home. His wife was not there. Defendant took a rifle and went to the house of his wife's paramour. Defendant discovered his wife hiding in an upstairs closet, killed her instantly by a single shot, and immediately pursued his wife's paramour. The latter was seriously wounded by a shot which struck him in the back. Within minutes after fleeing the scene, defendant was apprehended by the police. He was charged with first-degree murder and assault with intent to commit murder.

## II

At trial, the central issue was defendant's intent at the time of the shootings. During instruction of the jury, the trial judge essentially combined the instructions on first-degree and second-degree murder. Indeed, that part of the charge substantially comported with CJI 16:2:01.[3] However, defense counsel objected, *inter alia,* to that specific instruction because, prior to trial, he had submitted a lengthy set of proposed jury instructions.[4] Those

---

[3] CJI 16:2:01, at the time of defendant's trial, read as set forth in fn 3 of the majority opinion, *ante.*

[4] Defense counsel objected to the use of CJI 16:2:01 as follows:

"*[By Mr. Kolenda:]* With regard to the instructions that the defendant requested on pages 17 through 27 of the pre-deliberation instructions submitted by the defendant, there were definitions of the crimes of first- and second-degree murder and voluntary manslaughter. I believe firmly that they properly state the law comparably to those stated in the standard instructions. They are organized differently. I simply believe, as I have expressed to the court several times, that

instructions essentially followed the Criminal Jury Instructions but, where they did not, as when describing the degrees of murder, detailed explanations for the changes, with citation of authority, were provided.[5]

Shortly after beginning its deliberations, the jury requested "an explanation between first- and second-degree murder, the difference". Thereupon, the trial judge repeated the instruction previously

the attempt of the standard instructions to instruct simultaneously on those three crimes and tell the jury what the difference is is terribly and unnecessarily confusing.

"The proposed instructions also related the abstract law which was correctly stated to the facts of this case. For example, talking about repeated acts of provocation, finding a spouse in the act of adultery is a typical provocation, and manslaughter, and things of that sort, and those proposed instructions also explained all the differences between the crimes, something that our Supreme Court [sic] has recently, in People v Ray [56 Mich App 610; 224 NW2d 735 (1974)], certainly suggested is an appropriate thing to do.

"On pages 31 and 32 of the proposed instructions was a detailed comparison of the elements of the various crimes for the jury, leading them through what are the differences between the crimes they have to consider, and as I have indicated, in People v Ray, the Supreme Court has certainly suggested that that is appropriate."

The trial judge did not respond to the foregoing objection.

[5] Explaining the proposed murder instructions, defense counsel wrote:

"The major changes represented by my proposed instructions are found in the definition of the offenses which the jury can consider. Obviously, I have not modified any of the law reflected in those instructions. Rather, I have reorganized the instructions. In my opinion, the CJI instructions on first-degree and second-degree murder are unnecessarily confusing. As a lawyer, I have difficulty understanding them. I am sure a jury would have difficulty. As Judge Cardozo said about the distinctions between first- and second-degree murder, 'The present distinction is so obscure that no jury hearing it for the first time can be fairly expected to assimilate and understand it. I am not at all sure that I understand it myself after trying to apply it for many years and after diligent study of what has been written in the books.' The CJI's attempt to conserve space by discussing jointly first- and second-degree, only exacerbates that problem. I have attempted to simplify that situation by explaining what is first-degree murder, and then explaining second-degree murder, with an explanation of the difference. My proposed murder instructions are virtually identical to those given by Judge Boucher in People v Rondon, Kent County Circuit Court Case No 75-19259-FY."

given. Less than an hour later, defendant was found guilty as charged.

In his appeal of right to the Court of Appeals, defendant raised eight issues, including a challenge to the murder instructions. In a short per curiam opinion, the Court of Appeals found that:

"Only one issue merits discussion.

"The trial judge instructed the jury that in order to find a conviction of murder: 'The defendant must have either intended to kill, that is, he must have done the act intending that it result in death or in great and serious bodily injury, or he must have knowingly created a very high risk of death with the knowledge that it probably would cause death.' This instruction was erroneous. *People v Milton,* 81 Mich App 515; 265 NW2d 397 (1978), *modified on other grounds* 403 Mich 821 (1978).

"The case is remanded to the trial court for the entry of a judgment of conviction of the offense of second-degree murder and for resentencing. If the prosecution is persuaded that the ends of justice would better be served by a retrial on the charge of first-degree murder, upon notification to the trial court before resentencing, the trial court shall vacate the judgment and conviction and grant a new trial on the charge that the defendant committed the crime of first-degree murder.

"Reversed and remanded."

After the Court of Appeals denied both parties' applications for rehearing, we granted the prosecution's application for leave to appeal, but ordered defendant's delayed application for leave to appeal as cross-appellant held in abeyance pending disposition of the granted application.

III

Homicide is the killing of one human being by

another. *People v Austin,* 221 Mich 635, 644; 192
NW 590 (1923); *People v Allen,* 39 Mich App 483,
501; 197 NW2d 874 (1972) (LEVIN, P.J., *dissenting),*
*adopted* 390 Mich 383; 212 NW2d 21 (1973). It can
be either criminal or non-criminal. *Allen, supra;*
*People v Aaron,* 409 Mich 672, 714; 299 NW2d 304
(1980). Murder, *i.e.,* an unlawful killing, is a homi-
cide committed with malice aforethought. *Aaron,*
*supra; People v Garcia,* 398 Mich 250, 258; 247
NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).
Malice aforethought has been defined as "the in-
tention to kill, actual or implied, under circum-
stances which do not constitute excuse or justifica-
tion or mitigate the degree of the offense to man-
slaughter". *People v Morrin,* 31 Mich App 301,
310-311; 187 NW2d 434 (1971), *lv den* 385 Mich
775 (1971). See, also, *People v Haack,* 396 Mich
367, 375-376; 240 NW2d 704 (1976). The definition
of murder is derived from the common law,[6] *Peo-*
*ple v Scott,* 6 Mich 287, 292-293 (1859), and this
state's statutes proscribing murder have never
contained that definition.[7] *Aaron, supra,* p 713;
*Austin, supra; People v Doe,* 1 Mich 451, 457
(1850). Rather, the statutes have merely classified

---

[6] Indeed, the common law did not divide the crime of murder into
degrees. *Garcia, supra.* That development came about by statute and
was "for the purpose of graduating the punishment". *People v Doe,* 1
Mich 451, 457 (1850).

[7] First-degree murder: RS 1838, pt 4, tit 1, ch 3, § 1; RS 1846, ch
153, § 1; 1857 CL 5711; 1871 CL 7510; How Stat 9075; 1897 CL 11470;
1915 CL 15192; 1929 CL 16708, amended by 1931 PA 328, effective
September 18, 1931; 1948 CL 750.316, amended by 1969 PA 331,
effective March 20, 1970; MCL 750.316; MSA 28.548, amended by 1980
PA 28, effective March 7, 1980.

Second-degree murder; RS 1838, pt 4, tit 1, ch 3, § 1; RS 1846, ch
153, § 2; 1857 CL 5712; 1871 CL 7511; How Stat 9076; 1897 CL 11471;
1915 CL 15193; 1929 CL 16709, amended by 1931 PA 328, effective
September 18, 1931; 1948 CL 750.317; MCL 750.317; MSA 28.549.

the types of murder by degree.[8] The current statutes illustrate that classification:

"Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life." MCL 750.316; MSA 28.548.

"All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same." MCL 750.317; MSA 28.549.

As refined by this Court,[9] the elements of common-law murder are: (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification,[10] excuse,[11] or mitigation,[12] (4) done

[8] The murder statutes have remained virtually unchanged since their inception in 1838. Indeed, changes throughout the years have been mainly of the stylistic and grammatical variety. The major substantive changes have dealt with the punishment to be imposed and with the felony-murder portion of the first-degree murder statute, *i.e.,* refining the enumerated felonies.

[9] Early common-law definitions did not define the crime of murder with a negative element, *i.e.,* absent circumstances of justification, excuse, or mitigation:

"Murder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought, either express or implied." *People v Potter,* 5 Mich 1, 6 (1858). See, also, *Aaron, supra,* p 713; *Scott, supra,* p 292; *Maher v People,* 10 Mich 212, 218 (1862).

[10] Justifiable homicide is that which is authorized or commanded by law, *e.g.,* where the homicide is the result of a soldier acting in battle, a police officer acting reasonably in the course of his or her duties, a person acting in self-defense or in the defense of others, or a person executing a death sentence.

[11] Excusable homicide is that in which "the death is the result of an accident and the actor [is] not criminally negligent". *Morrin, supra,* p 310.

[12] The common-law crimes of voluntary and involuntary man-

with an intent to kill, an intent to inflict great
bodily harm, or an intent to create a very high
risk of death with the knowledge that the act
probably will cause death or great bodily harm.[13]
*People v Hansen,* 368 Mich 344, 350-351; 118
NW2d 422 (1962). Common-law murder, as
evolved, is what has come to be known as second-
degree murder. *Allen, supra,* 39 Mich App 501-503;

---

slaughter are "the unlawful killing of another without legal justifica-
tion or excuse and are distinguished from the higher crimes of
murder by the absence of malice". *People v Townes,* 391 Mich 578,
589; 218 NW2d 136 (1974). Circumstances which reduce or mitigate
the crime of murder to manslaughter, *i.e.,* which negate the malice or
intent necessary for murder, include: (1) adequate provocation causing
commission of a killing in the sudden heat of passion, (2) unjustifiable
self-defense, (3) the performance of an act in a grossly or criminally
negligent manner, and (4) the performance of an act not naturally
tending to cause great bodily harm. See, generally, *Townes, supra,* pp
589-591; *Morrin, supra,* p 311, fn 7.

[13] As defined at common law, the term "malice aforethought"
essentially contains two elements: (1) the intention to kill, either
express or implied, (2) absent circumstances of justification, excuse, or
mitigation. See Perkins, Criminal Law (2d ed), p 49. See, also, *People
v Haack,* 396 Mich 367, 375-376; 240 NW2d 704 (1976). Thus, the
negative element has always been present and, under federal and
state constitutional due process guarantees, when a defendant intro-
duces evidence that circumstances of justification, excuse, or mitiga-
tion exist, must be proved by the prosecution beyond a reasonable
doubt.

Further, over the years, this Court's pronouncements can fairly be
interpreted as delineating the positive intent to kill requirement of
malice aforethought from the negative absence of circumstances
requirement, *i.e.,* the positive state of mind requirement has come to
be viewed as separate, although sometimes still identified by the term
"malice aforethought", while the negative element has taken on a
separate identity not referred to by that term. Whether that delin-
eation takes the form of two distinct elements or of one element with
two sub-elements should have no evidentiary significance. Indeed, as
noted previously, unless the defendant introduces evidence that cir-
cumstances of justification, excuse, or mitigation exist, the prosecu-
tion, in order to obtain a conviction of murder in either degree, need
not prove beyond a reasonable doubt the absence of those circum-
stances.

Consequently, in order to clear up any confusion caused by this
Court's past decisions and because of our recent express disapproval
of the terms "malice" and "malice aforethought", *People v Woods,*
416 Mich 581, 622-629; 331 NW2d 707 (1982), the elements of com-
mon-law murder should be viewed as set forth above.

*People v Carter,* 395 Mich 434, 437; 236 NW2d 500 (1975), *reh den* 395 Mich 923 (1976).

On the other hand, first-degree premeditated[14] murder is said to be a creature of statute and to include all of the elements of second-degree murder, plus an additional one, *i.e.,* either the intent was premeditated and deliberated or the death occurred during the perpetration or attempted perpetration of one of the statutorily enumerated felonies. *Carter, supra; Allen, supra; Morrin, supra,* p 324.

Nevertheless, stating that first-degree murder is second-degree murder plus premeditation and deliberation is not entirely accurate. Indeed, the intent element of second-degree murder varies from that of first-degree murder. In addition to the obvious distinction that second-degree murder is a general-intent crime while first-degree murder is one of specific intent, *Garcia, supra,* p 259; *People v Langworthy,* 416 Mich 630, 645-646, 652; 331 NW2d 171 (1982), there exists a more subtle distinction. Specifically, the intent required to commit second-degree murder can consist of any one of the following: (1) an intent to kill, (2) an intent to inflict great bodily harm, or (3) an intent to create, *i.e.,* knowingly creating, a very high risk of death with the knowledge that the act probably will cause death or great bodily harm.[15] On the other

---

[14] When referring to first-degree murder throughout the remainder of this opinion, we are referring only to first-degree premeditated murder and express no opinion as to the applicability of the analysis to first-degree felony murder. For a discussion of the latter, see *People v Aaron, supra.*

[15] This latter type of intent forms the basis of what is historically known as "depraved heart murder". LaFave & Scott, Criminal Law, § 70, pp 541-545. It has been alternatively stated as: (1) the intentional commission of an act whose natural tendency is to cause death or great bodily harm, *Haack, supra,* p 375; (2) the intentional setting in motion of a force likely to cause death or grievous bodily harm, *Guilty Plea Cases,* 395 Mich 96, 131; 235 NW2d 132 (1975), *reh den*

hand, the intent required to commit first-degree murder can only consist of an intent to kill. *Langworthy, supra,* pp 650-651; *Scott, supra,* p 294; *People v Potter,* 5 Mich 1, 8 (1858).

As can be seen, although both degrees of murder can be based on an intent to kill, the types of intent required to commit first-degree and second-

395 Mich 912 (1975), 398 Mich 951 (1976), *cert den sub nom Sanders v Michigan,* 429 US 1108 (1977); and (3) the wanton and wilful disregard of the likelihood that the natural tendency of one's behavior is to cause death or great bodily harm. *Aaron, supra,* p 714, quoting LaFave & Scott, Criminal Law, p 528. See, also, *Langworthy, supra,* pp 650-651; *Woods, supra,* p 627. Similarly, recently revised CJI 16:2:01 describes this type of intent as "wilfully and wantonly disregard[ing] the strong and plain likelihood that death would result" and as the commission of:

"a wanton and wilful act the natural tendency of which was to cause death or great bodily harm. There must be a strong and plain likelihood that death or serious bodily harm will result, and the defendant must have wilfully and wantonly disregarded the knowledge of the possible consequences of death or serious injury."

However, the foregoing, in addition to perpetuating the error of its predecessor noted below, might also be read as combining two distinct types of intent relevant to second-degree murder, *i.e.,* the knowing creation of a very high risk of death either: (1) with knowledge of the probable consequences, or (2) with knowledge only of the attendant circumstances. The latter intent merely requires a consciousness of the act from which a reasonable person, not necessarily the actor, could infer the consequences. That has never formed a basis for second-degree murder in this state, although it does so in other jurisdictions. Rather, Michigan requires that the actor intended or consciously done the act which created the very high risk of death and that the actor have been aware or have had knowledge of the probable consequences of his or her act. See, *e.g., Woods, supra,* pp 587, 610-613; *Maher, supra,* p 219; *Potter, supra,* p 7; *People v Wright,* 408 Mich 1, 19-26; 289 NW2d 1 (1980); *People v Pepper,* 389 Mich 317, 321; 206 NW2d 439 (1973); *Wellar v People,* 30 Mich 16, 19 (1874).

Consequently, we must disapprove the use of CJI 16:2:01 in both its present and previous forms. Indeed, we again remind both bench and bar that the Criminal Jury Instructions published by the Institute of Continuing Legal Education have never been adopted or approved for use by this Court. Rather, those instructions should be viewed as research tools which do not necessarily contain an accurate statement of the law.

Finally, we note that nothing in this opinion precludes a properly instructed jury, or a trial judge in a bench trial, from inferring, on the basis of evidence presented at trial, including evidence of the defendant's conduct, that the defendant possessed the requisite intent to commit the crime charged or a lesser included offense.

degree murder are not identical, *i.e.,* intentions to inflict great bodily harm and to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm, applicable when discussing the intent element of second-degree murder, have no place in the definition of first-degree murder. Consequently, since the instructions in this case blurred that distinction and would have permitted the jury to find first-degree murder premised on either an intent to inflict great bodily harm or an intent to create a very high risk of death with knowledge that the act probably would cause death or great bodily harm, we would hold that they were erroneous. See, *e.g., People v Milton,* 81 Mich App 515, 518; 265 NW2d 397 (1978), *modified on other grounds* 403 Mich 821 (1978).

IV

In summary, it was error for the trial judge in this case to instruct as he did on the intent elements of first-degree and second-degree murder. Further, since the central issue at trial was defendant's intent at the time of the shootings and since both parties presented substantial evidence on that issue, we cannot say that the error was harmless beyond a reasonable doubt.[16] *Cf. People v*

[16] Some of the defenses raised at trial called into question the presence of an intent to kill. For example, the claim of insanity necessarily implied that defendant lacked the requisite intent to commit first-degree murder. Similarly, defendant's claim of voluntary manslaughter did not concede the presence of an intent to kill. Indeed, although the intent element of voluntary manslaughter can be predicated on an intent to kill, an intent to kill is not necessary. Rather, the intent element of voluntary manslaughter can be predicated on any one of the intents which can comprise second-degree murder.

Finally, as noted in the recitation of the facts, it is significant that the jury, after commencing its deliberations, requested "an explanation between first- and second-degree murder, the difference" and

*Burgess,* 96 Mich App 390; 292 NW2d 209 (1980), *lv den* 409 Mich 912 (1980). Finally, while the Court of Appeals ordered that "a judgment of conviction * * * of second-degree murder" be entered, we would not sanction that remedy at this time.[17] Indeed, the possible merit in defendant's other issues may render that remedy inappropriate and necessitate a new trial. Consequently, in lieu of granting defendant's delayed application for leave to appeal as cross-appellant, we would remand this case to the Court of Appeals for plenary consideration of defendant's remaining issues.

KAVANAGH and LEVIN, JJ., concurred with CAVANAGH, J.

BOYLE, J. *(concurring).* I have joined the opinion of Justice BRICKLEY in this case, but I write separately to respond to arguments made in the minority opinion.

## I

It is not error to instruct a jury that first-degree murder is second-degree murder plus premeditation and deliberation. The minority opinion disapproves of the trial court's instructions and those contained in the proposed Michigan Criminal Jury Instructions which define first-degree premeditated murder as second-degree murder plus the elements of premeditation and deliberation.[1] The opinions of

then convicted defendant of the *higher* offense. Typically, we find harmless error when, after an erroneous instruction, the jury convicts a defendant of a *lesser* included offense. This is not such a case.

[17] For a discussion of when such a remedy is appropriate, see *People v Hoffmeister,* 394 Mich 155, 161-162; 229 NW2d 305 (1975), *reh den* 394 Mich 944 (1975).

[1] The instructions submitted by defense counsel in this case were an admirably clear and accurate statement of the law of murder. However, the issue in this case is not whether those instructions were more accurate than those given by the trial court, but, rather, whether the trial court's instructions were so erroneous as to require reversal.

this Court have defined first-degree murder precisely in this way. In *People v Carter,* 395 Mich 434, 437-438; 236 NW2d 500 (1975), we stated:

"First-degree murder is second-degree (common-law) murder *plus* an element, *viz.,* either premeditation or the perpetration or attempt to perpetrate an enumerated felony. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973)."

Conversely, second-degree murder is first-degree murder minus premeditation or other aggravating circumstance. There is nothing incorrect in this formulation.

Murder is a homicide committed with malice. The first-degree murder statute has no application until it is shown that a homicide is murder. Thus, the trial court must define common-law murder for the jury. All of the elements of second-degree murder are contained within the statutory crime of first-degree murder. Indeed a trial judge must *sua sponte* instruct on second-degree murder because it is always a lesser included offense of first-degree murder. *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975). Nevertheless, the minority would reverse a first-degree murder conviction in this case by rejecting as erroneous jury instructions which reflect these principles.

Although they seemingly concede that both first-degree murder and second-degree murder were correctly defined in the trial court's instruction, the minority would find error because of the order of the instruction. The minority suggests that defining first-degree murder with reference to the elements of second-degree murder "blurs the distinction" between the intent elements of the two offenses. This conclusion is rooted in the erroneous belief that the intent to kill required for first-

degree murder is somehow different than that included in the mental element of second-degree murder.

A conviction of first-degree premeditated murder requires a finding that the defendant possessed the specific intent to cause death. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). An intent to cause great bodily harm or to engage in wanton, reckless conduct, although sufficient to support a second-degree murder conviction, is not sufficient for first-degree premeditated murder. See generally Perkins, Criminal Law (2d ed), p 91. While it is therefore correct to state that a first-degree premeditated murder cannot be based on less morally culpable intent than the intent to kill, it is incorrect to state that the intent to kill in second-degree murder is different than that for first-degree murder.

Perhaps the confusion is traceable to those cases which define malice aforethought as "the intention to kill, actual or implied". See, *e.g., People v Morrin,* 31 Mich App 301, 310-311; 187 NW2d 434 (1971). It is more precise to define malice aforethought or the mental element of murder, as including either an intent to kill, *or* an intent to inflict great bodily injury, *or* wanton and wilful disregard of an unreasonable human risk absent circumstances sufficient to constitute justification, excuse, or mitigation. Second-degree murder does not require an intent to kill; rather it requires a mental state which can be met by alternative states of mind, only one of which is intent to kill. A definition of the mental element of second-degree murder which speaks in terms of an "implied intent to kill" can serve only to confuse.

Where intent to kill is the foundation for second-degree murder it is not a different intent than

that required for first-degree murder. Rather, the intent to kill under both degrees of murder is identical.[2] Thus, it is not intent to kill which distinguishes first-degree murder from second-degree, because second-degree murder includes intent to kill. It is the wilful premeditation and deliberation element which distinguishes the two degrees of murder.

The failure to recognize that the specific intent of first-degree murder is not an additional element of that crime would seem to imply that first-degree murder always requires the specific intent to take a life. This is clearly not the case. Common-law murder in the course of an enumerated felony is first-degree murder, and the intent required is either an intention to kill, *or* an intention to do great bodily harm, *or* "the wanton and wilful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm", *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980). Thus, as with second-degree murder, there are several alternative mental states which, when established, support a first-degree murder conviction despite the absence of a specific intent to kill.

In rejecting the principle that first-degree murder is second-degree murder plus premeditation, the minority fails to recognize that the concepts of wilfulness, deliberation, and premeditation in the context of first-degree murder necessarily imply a

---

[2] Indeed, if the minority is correct that, wholly apart from the element of premeditation, the element of intent to kill for first-degree murder is different than the element of intent to kill for second-degree murder, then second-degree murder is not a necessarily included offense of first-degree murder, *Jenkins* is incorrect and should be overruled, and, henceforth, trial judges in this state should be required to instruct on second-degree murder only when the evidence in the case raises an issue concerning the defendant's intent. In net effect, the minority opinion suggests that second-degree murder is a cognate offense of first-degree murder.

specific intent to kill. It is the intent to kill which must be premeditated. See Perkins, *supra,* p 93. In *Garcia,* the Court specifically held that the words " 'wilful * * * killing' in [MCL 750.316; MSA 28.548] mean the intent to accomplish the result of death". *Garcia, supra,* p 259. The mental element for first- and second-degree murder is the same: the act which causes death must be accompanied by a life-endangering state of mind. It is the additional element of premeditation and deliberation that requires a specific intent to kill for first-degree murder and excludes convictions based only upon wilful and wanton misconduct or other morally culpable conduct which would support a conviction of murder in the second degree.

## II

As Justice BRICKLEY points out, the instructions given by the trial judge in this case did not allow the defendant to be convicted of first-degree premeditated murder without requiring the jury to find that the defendant intended to cause the death of the victim. The necessary link between premeditation and the intent to kill is clearly present in these instructions.[3]

Further, this case is a particularly inappropriate

[3] I do not dispute that the instruction given by the trial court in this case could have been more precise. Any lack of precision is not, however, attributable to the trial court's definition of first-degree murder or to its definition of second-degree murder. Rather, because of the holding in *People v Garcia, supra,* that first-degree murder is a specific-intent crime, the trial court's instruction would have been more complete had the jury been told that if it found that defendant intended only to cause great and serious bodily injury or that the defendant knowingly created a very high risk of death with knowledge of its consequences, but that the defendant did not intend to cause the victim's death, then they could not find the defendant guilty of first-degree premeditated murder. The trial court could also have given the jury separate instructions for first- and second-degree murder in the manner suggested by defendant's proposed instructions.

vehicle for the communication of a message to the trial courts of this state requiring them to utilize more precise instructional language in first-degree murder cases. Because of the thrust of the defense in this case, it is simply fanciful to conclude that the jury's verdict was influenced by any purported confusion concerning the different types of intent required for first- and second-degree murder.

To establish premeditation and deliberation, the prosecutor offered testimony from defendant's companions on the evening preceding decedent's death. This testimony established that defendant drove by the home of his wife's lover three times and twice commented, "I have business to take care of [there]". A patron who was in a bar with defendant during the evening testified that defendant said, "before I will let another man have her, I will put her six feet under".

Defendant arrived at the lover's home at 3 a.m. carrying a deer rifle, broke down the front door, shot his wife in the back of the neck as she crouched nude in the bedroom closet, and then shot her lover in the back as he fled the house. When apprehended the same evening, defendant stated to one of the arresting officers, "She got what she deserved after running around for nine months".

Defendant countered by disputing the credibility of this evidence. He also presented alcohol and drug intoxication and insanity defenses to negate his capacity to form a deliberated and premeditated intent to kill, claimed that provocation reduced the crime to voluntary manslaughter, and argued the absence of criminal responsibility. No evidence was presented by defendant as to his intent at the time the fatal shot was fired. Rather, defendant testified that he could not remember anything after he saw his wife in the bedroom.

Despite the fact that the jury's verdict reflects that they rejected these defenses and therefore found (1) premeditation and deliberation, and (2) criminal responsibility and inadequate provocation, the minority would find error requiring reversal. They argue that reversal is required because the jury may have been confused by the instructions and may have erroneously believed that they could return a first-degree murder verdict if they merely concluded that defendant intended only great bodily harm or was recklessly indifferent to the consequences of his actions.

The minority would reverse defendant's first-degree murder conviction on the basis of this perceived confusion despite the fact that defendant made no effort to show that he was not guilty of first-degree murder because he intended only to inflict great bodily harm or that his conduct could only be characterized as wanton recklessness. The defendant attempted to convince the jury that he did not possess the requisite intent to kill because he was either too drunk or deranged to have formed that intent. He also argued that the presence of legal provocation reduced his conduct to voluntary manslaughter and did not seek to show that he possessed less than a specific intent to kill. None of these defense theories is affected by the isolated potential error in the court's instructions. One shot from a deer rifle was fired into the back of decedent's neck as she knelt nude in the closet. There was no issue created by the evidence which raised a question of intention to inflict great bodily harm or wanton and wilful recklessness.

The court's instructions in this case did not misstate the law. In addition, on the basis of these instructions, no reasonable juror could have convicted this defendant of first-degree premeditated murder without finding that he intended to cause the death of his wife.