*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONNIE LAMONT SPEARS,

Defendant-Appellant.

FOR PUBLICATION
April 20, 2023
9:20 a.m.

No. 357848
Wayne Circuit Court
LC No. 16-002012-01-FC

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

RIORDAN, J.

Defendant appeals as on leave granted[1] the trial court's order denying his motion for relief from judgment under MCR 6.502, in which he sought to withdraw his guilty plea in the trial court. Defendant pleaded guilty to one count of second-degree murder, MCL 750.317, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 20 to 50 years' imprisonment for second-degree murder, and two years' consecutive imprisonment for felony-firearm. On appeal, defendant argues that his plea-based convictions must be vacated because the trial court violated his constitutional right of self-representation, his guilty plea was invalid under MCR 6.302, and his guilty plea was the result of coercion. Relatedly, defendant argues that he has established entitlement to relief from judgment under the applicable court rules. We affirm.

## I. BACKGROUND

This case arises from defendant's guilty plea in the trial court. Defendant was charged with one count of first-degree premeditated murder, MCL 750.316, one count of intentionally discharging a firearm at a dwelling or potentially occupied structure (intentional discharge), MCL 750.234b, and one count of felony-firearm. On the first day of trial, defendant accepted a plea offer and pleaded guilty to second-degree murder and felony-firearm in exchange for dismissal of

---

[1] This case is before this Court on remand for consideration as on leave granted pursuant to our Supreme Court. *People v Spears*, 509 Mich 1053 (2022).

-1-

the counts of first-degree premeditated murder and intentional discharge, with a sentencing agreement of 20 to 50 years' imprisonment for second-degree murder and two years' imprisonment for felony-firearm.

At defendant's sentencing, he, with then-newly retained counsel, orally moved to withdraw his guilty plea, arguing that his plea was invalid because he was "highly medicated on Seroquel" at the time of the plea and that he did not fully understand the nature of what was occurring. Further, defendant argued that his "so-called allocution" was made by his prior counsel, not him. The trial court, finding no error in its acceptance of defendant's guilty plea, declined to allow defendant to withdraw his plea. The trial court then sentenced defendant consistent with the prosecution's plea offer, as described earlier.

Defendant subsequently moved again, now in a written motion and through appointed appellate counsel, to withdraw his guilty plea. Defendant also alternatively requested a *Ginther*[2] hearing. In particular, defendant argued that his initial trial counsel's ineffective assistance prevented him from tendering a knowing, intelligent, and voluntary plea. At another hearing, the trial court again denied defendant's motion to withdraw his guilty plea. The trial court also denied defendant's request for a *Ginther* hearing, stating that there was nothing to indicate ineffective assistance by defendant's initial trial counsel during the plea process.

Defendant applied for leave to appeal in this Court, which we denied. *People v Spears*, unpublished order of the Court of Appeals, entered October 15, 2018 (Docket No. 344921). Our Supreme Court also denied defendant's application for leave to appeal. *People v Spears*, 504 Mich 852 (2019).

Defendant subsequently filed a motion, pursuant to MCR 6.502, in the trial court for relief from judgment. He once again challenged his plea-based convictions. Defendant asserted four separate grounds for relief, stating that these issues "have not been previously raised on these facts in any prior hearing, appeal, or MOTION." Specifically, defendant argued that: (1) his initial trial counsel provided ineffective assistance, and the trial court improperly denied his right of self-representation; (2) the trial court violated MCR 6.302 when accepting his plea because it omitted questioning required by that court rule, including questioning required by *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972), and the plea lacked a sufficient factual basis and was otherwise involuntary; (3) the trial court, in taking his plea, applied coercion in violation of *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982), by actively participating in the plea negotiations; and (4) appointed appellate counsel provided ineffective assistance by failing to raise the meritorious issues raised in the instant motion.

The trial court denied the motion for relief from judgment. The trial court explained that initial trial counsel adequately represented defendant, that defendant was not denied his right of self-representation because he never made an unequivocal request to represent himself, that the court complied with the relevant court rules when taking his plea, that the court did not violate *Killebrew*, and that appointed appellate counsel did not provide inadequate assistance.

---

[2] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

We denied defendant's application for leave to appeal. *People v Spears*, unpublished order of the Court of Appeals, entered October 15, 2021 (Docket No. 357848). The Supreme Court then remanded the case back to us with the instruction to consider the matter as if we originally had granted leave. *People v Spears*, 509 Mich 1053 (2022).

## II. STANDARDS OF REVIEW

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Id*. at 628-629 (citations omitted). "[A] trial court's findings of fact are clearly erroneous if, after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made." *People v McSwain*, 259 Mich App 654, 682; 676 NW2d 236 (2003) (quotation marks and citation omitted).

Similarly, a trial court's decision regarding a defendant's request to represent himself or herself is reviewed for an abuse of discretion. See *People v Anderson*, 398 Mich 361, 367; 247 NW2d 857 (1976); *People v Hicks*, 259 Mich App 518, 521; 675 NW2d 599 (2003), abrogated in part on other grounds, *People v Jones*, 494 Mich 880 (2013). A trial court's ruling on a motion to withdraw a guilty plea likewise is reviewed for an abuse of discretion. *People v Pointe-Bey*, 321 Mich App 609, 615; 909 NW2d 523 (2017).

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 552, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (quotation marks and citation omitted). Because the trial court never held a *Ginther* hearing, our review of this issue is limited to errors apparent from the record. See *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

## III. ANALYSIS

## A. LEGAL STANDARDS

MCR 6.508 governs entitlement to relief on a motion for relief from judgment, and it provides, in relevant part:

> The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

> * * *

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

* * *

(*ii*) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

(*iii*) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case . . . .[3]

## B. SELF-REPRESENTATION

First, defendant argues that his convictions must be vacated because the trial court unconstitutionally denied his right of self-representation. We disagree.

"The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). "The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Id*. "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as a guarantor of a fair trial, is the standard, not the exception, in the absence of a proper waiver." *People v Russell*, 471 Mich 182, 189-190; 684 NW2d 745 (2004) (quotation marks and citation omitted).

To invoke the right of self-representation: (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3)

---

[3] "Good cause" for failure to raise grounds on an earlier appeal may be established by showing ineffective assistance of appellate counsel. See *People v Reed*, 449 Mich 375, 382; 535 NW2d 496 (1995). Defendant argues that his appointed appellate counsel was ineffective for failure to raise the instant issues in his earlier challenge to his plea-based convictions. Because we conclude that none of these issues have merit, we need not address whether defendant has shown "good cause."

We also note that MCR 6.508(D)(3)(b)(*ii*) defines "actual prejudice," in the context of a challenge to a plea-based conviction, as a defect in the proceedings that "renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand." Most of the instant issues do not relate to the allegedly involuntary nature of the plea, but rather the alleged failure of the plea to be "understanding" and "accurate." See MCR 6.302(B) and (D). Regardless, because the underlying issues have no merit, we need not address whether defendant has shown "actual prejudice."

the trial court must determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business. [*Dunigan*, 299 Mich App at 587 (quotation marks and citation omitted).]

According to defendant, the trial court unconstitutionally denied his right of self-representation by failing to address his request to represent himself. Defendant relies on a June 27, 2016 letter to the trial court as being an unequivocal request for self-representation. Defendant noted that the trial court initially stated at a July 15, 2016 pretrial hearing that it would address the letter's concerns following the determination of competency, but it never did so. Defendant particularly emphasizes the letter's statements that he "wanted to fire his trial counsel and that he 'would like to continue forward without him,' " and that he "could 'start trial while representing [himself].' " Defendant further argues that the trial court's failure to address his request is structural error and requires that his convictions be vacated.

However, defendant never unequivocally requested to represent himself, so the trial court did not abuse its discretion by "failing" to address this request or by otherwise "denying" self-representation. Absent an unequivocal request, the trial court had no duty to determine whether defendant knowingly, intelligently, and voluntarily wished to represent himself, or whether self-representation would have disrupted, inconvenienced, or burdened the court. See *Anderson*, 398 Mich at 367. Indeed, defendant actually was requesting *substitute* counsel, as clarified by his oral motion for new counsel at a September 9, 2016 pretrial hearing. Defendant only mentioned self-representation once, and that was in the mere passing reference in his June 27, 2016 letter that he could represent himself if no substitute representation was possible in time for trial. This reference to self-representation, which defendant never mentioned when later orally requesting new counsel in the trial court, therefore, was not an unequivocal request. Rather, it can be better characterized as the defendant merely musing on the feasibility of self-representation on an interim basis in conjunction with his request for new counsel.

Further, to the extent that there is any ambiguity between defendant's request for new counsel and his isolated mention of self-representation, we note that such ambiguity has defeated a defendant's asserted denial of the right of self-representation in other cases. See *Russell*, 471 Mich at 193 ("[T]o the degree that defendant's refusal to explicitly choose between continued representation by appointed counsel and self-representation created any ambiguity regarding defendant's desire to unequivocally waive his right to trial counsel, any ambiguity should have been resolved in favor of representation . . . ."); *People v Dennany*, 445 Mich 412, 444-445; 519 NW2d 128 (1994).

For these reasons, defendant has failed to establish entitlement to relief on this issue.

## C. MCR 6.302, *JAWORSKI*, AND FACTUAL BASIS

Next, defendant argues that his convictions must be vacated because the trial court failed to comply with MCR 6.302(B) and *Jaworski* when taking his guilty plea, and because the plea lacked a sufficient factual basis under MCR 6.302(D). We disagree.

"Guilty- and no-contest-plea proceedings are governed by MCR 6.302." *People v Cole*, 491 Mich 324, 330; 817 NW2d 497 (2012). Under MCR 6.302, a plea must be "understanding, voluntary, and accurate." *People v Brown*, 492 Mich 684, 688-689; 822 NW2d 208 (2012).[4] Before accepting a guilty plea, the trial court "must place the defendant or defendants under oath and personally carry out subrules (B)-(E)." MCR 6.302(A). See also *People v Plumaj*, 284 Mich App 645, 648; 773 NW2d 763 (2009).

> Under MCR 6.302(B), which relates to an understanding plea, the court must speak directly to the defendant and determine that he or she understands the name of the offense and the maximum possible prison sentence, the trial rights being waived, and loss of the right to appeal. Pursuant to MCR 6.302(C), which relates to a voluntary plea, the court must make inquiries regarding the existence and details of any plea agreements and whether the defendant was promised anything beyond what was in the agreement, if any, or otherwise. The court must also ask the defendant whether he or she had been threatened and if the plea was his or her choice. MCR 6.302(D), which relates to an accurate plea, requires the court to establish a factual basis for a guilty plea . . . . Finally, under MCR 6.302(E), the court must make additional inquiries, including whether the prosecutor and defense counsel are "aware of any promises, threats, or inducements other than those already disclosed on the record, and whether the court has complied with subrules (B)-(D)." [*Id*. at 648 n 2.]

"Strict compliance with MCR 6.302 is not essential; rather, our Supreme Court has adopted a doctrine of substantial compliance, holding that whether a particular departure from Rule 785.7 [now MCR 6.302] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance." *Id*. at 649 (quotation marks and citation omitted; alteration in original).

Defendant raises two distinct challenges to the validity of his plea. First, defendant asserts that his guilty plea was not entered voluntarily[5] because the trial court only questioned him on one of the three required *Jaworski* rights and otherwise failed to comply with the requirements of MCR

---

[4] "[T]he Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing." *Cole*, 491 Mich at 333. Thus, the requirements of MCR 6.302 that a plea be "voluntary" and "understanding" (i.e., "knowing") are intended to satisfy due process, although the court rule and due process are not perfectly coextensive. See *id*. at 332. MCR 6.302 also requires that a plea be "accurate," notwithstanding that "the [United States] Supreme Court has not acknowledged a Due Process requirement that state courts must first establish an independent factual basis before acceptance of a guilty plea." *Oller v Bryant*, 650 Fed App'x 598, 601 (CA 10, 2016).

[5] To be precise, defendant claims that the failure of the trial court to comply with MCR 6.302(B) renders his plea involuntary. However, noncompliance with that court rule arguably would mean that the plea was not understandingly entered. An involuntary plea occurs when, for example, the defendant was threatened into entering the plea. See MCR 6.302(C)(4)(b).

6.302(B), which include advising the defendant on the specific offenses to which he or she is pleading guilty, as well as the maximum prison sentence for those offenses.[6]  Second, defendant asserts that his guilty plea lacked a sufficient factual basis, i.e., the record did not establish that it was accurate under MCR 6.302(D).  According to defendant, his plea lacked a sufficient factual basis because the trial court never established that the second-degree murder was committed without justification or excuse, an essential element of that offense.  Defendant contends that he made clear on the record that he acted in self-defense, placing the trial court on notice that self-defense was an issue in his case.

With regard to defendant's first challenge, we conclude that the trial court substantially complied with MCR 6.302(B), including conducting the necessary inquiry regarding *Jaworski* rights.[7]  While the trial court only explicitly questioned defendant on the record regarding one *Jaworski* right in confirming that defendant understood that he would forego his right to a jury trial by pleading guilty, explicit questioning on each *Jaworski* right is not always necessary.  As stated by this Court:

> [A] defendant may be advised of his or her [*Jaworski*] rights either in writing or on the record.  Either manner is sufficient.  However, whatever manner is used, the rule makes plain that there must be some colloquy with a defendant on the record regarding his or her rights to ensure that the defendant has been advised of those rights.  That is, even if a defendant is advised of his or her rights in writing, the rule mandates that the court shall address the defendant and obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights.  The trial court need not necessarily reiterate each of the individual rights on the record, but it must, at a minimum, verify that the defendant did in fact read and understand those rights.  In the absence of such a colloquy on the record, intelligent waiver of these important rights cannot be presumed.  [*People v Al-Shara*, 311 Mich App 560, 570-571; 876 NW2d 826 (2015) (cleaned up).]

---

[6] MCR 6.302(B)(1) provides that the trial court must advise the defendant about "the name of the offense to which the defendant is pleading," subrule (B)(2) provides that the trial court must advise the defendant about "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law," and subrule (B)(3) provides that the trial court must advise the defendant about several trial rights that he or she is forfeiting, including the three *Jaworski* rights.

[7] In *Jaworski*, 387 Mich at 30-31, the Court held that a guilty plea must be set aside when the record of the plea proceedings shows that the defendant was not explicitly advised of the following constitutional rights waived by pleading guilty: (1) the right to trial by jury, (2) the right to confront one's accusers, and (3) the privilege against self-incrimination.  "If a *Jaworski* right is omitted from the plea proceedings, then reversal is mandated."  *People v Saffold*, 465 Mich 268, 273; 631 NW2d 320 (2001).  "However, the omission from the plea proceedings of one or another of the rights attendant to a trial, other than a *Jaworski* right, or the imprecise recital of any such right, including a *Jaworski* right, does not necessarily require reversal."  *Id.* at 273-274.

In *Al-Shara*, this Court set aside the defendant's no-contest plea because the trial court failed to mention two of the three *Jaworski* rights on the record, and because there was no mention in the record of the signed form purportedly confirming the defendant's understanding waiver of these rights. *Id.* at 573-574. While the prosecution argued that the defendant's uncontested signature on the advice-of-rights form alone was sufficient for substantial compliance under MCR 6.302, this Court rejected this argument. *Id*. at 574. We explained:

> [I]f a written form is used to inform a defendant of his or her rights, two requirements are mandatory: (1) the writing must detail the rights in question, and (2) the court must conduct an oral colloquy with the defendant, on the record, regarding that writing. When a court completely abdicates its obligation to personally discuss the writing with a defendant on the record, and the rights contained in the writing are not otherwise imparted to a defendant on the record during the plea proceedings, we fail to see how the [trial] court can be said to have substantially complied with MCR 6.610(E)(4). [*Id*.][8]

Here, in contrast, the trial court did discuss defendant's written acknowledgment of rights on the record when confirming not only that defendant signed the plea acceptance form that referenced all of the rights allegedly omitted by the trial court, but also discussed its contents with his attorney:

> *The Court*: There are a number of rights on this acceptance form. You went over this with your lawyer, correct?
>
> *Defendant Spears*: Yes.
>
> *The Court*: And you signed at the bottom, correct?
>
> *Defendant Spears*: Yes.

Following *Al-Shara*, this colloquy is a proper method for accepting defendant's guilty plea in substantial compliance with MCR 6.302 and *Jaworski*. See also MCR 6.302(B). Despite defendant's now contradiction that he never read this form, but merely signed where directed by his counsel, he explicitly confirmed when questioned on the record by the trial court that he reviewed the form with his counsel and then signed it.

---

[8] *Al-Shara* concerned pleas in the district court, so MCR 6.610 was the applicable court rule in that case. However, the holding of *Al-Shara* is equally applicable here, particularly because MCR 6.302(B) provides as follows:

> The requirements of subrules (B)(3) and (B)(5) may be satisfied by a writing on a form approved by the State Court Administrative Office. If a court uses a writing, the court shall address the defendant and obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights. The waiver may be obtained without repeating the individual rights.

In addition to arguing that he was not properly advised of his *Jaworski* rights, defendant also argues that the trial court failed to advise him of the names of the offenses to which he was pleading guilty, see MCR 6.302(B)(1), the maximum possible prison sentence, see MCR 6.302(B)(2), and the various trial rights that he was waiving, see MCR 6.302(B)(3). We disagree. Concerning MCR 6.302(B)(1), while the trial court itself did not advise defendant of the names of the offenses to which he was pleading guilty, the prosecution noted at the plea hearing that defendant would be pleading guilty "to a reduced count one of second degree murder and count three weapons felony firearm." Later, the prosecution again noted that defendant would be pleading guilty "to a reduce[d] count one murder in the second degree as well as count three weapons felony firearm."

Our Supreme Court has recognized that "[a] guilty plea conviction will not be reversed if the judge engages in the required colloquy but fails to mention an item which the record shows was established through, for example, an opening statement of or interjection by the prosecutor or defense counsel in the hearing of the judge and defendant." *In re Guilty Plea Cases*, 395 Mich 96, 114-115; 235 NW2d 132 (1975). This is what occurred at defendant's plea hearing. See *id*. See also *People v Saffold*, 465 Mich 268, 278; 631 NW2d 320 (2001) (explaining that in *Guilty Plea Cases*, the Court "approved cases where the trial judge did not personally address the defendant by informing him of the maximum sentence . . . or the charge that the defendant was facing" because "the prosecutor's statement of that information in the presence of the defendants was sufficient") (emphasis omitted). Similarly, concerning MCR 6.302(B)(2), the prosecution noted at the plea hearing that "if the defendant were found guilty of second degree murder, this Court could still impose a maximum sentence of life in prison at the time of sentencing even if he were found guilty of second degree murder." The prosecution also noted the consecutive, mandatory two years' imprisonment for felony-firearm. Thus, these statements on the record sufficiently satisfied MCR 6.302(B)(2). Finally, concerning MCR 6.302(B)(3), the plea acceptance form listed all of the trial rights mentioned by that court rule and, as explained *supra*, defendant confirmed on the record that he discussed the form with his counsel and that he then signed it. This was an acceptable method of advisement. See MCR 6.302(B). Accordingly, there was no violation of MCR 6.302(B).

With regard to defendant's second challenge, we also conclude that the trial court established a sufficient factual basis for defendant's guilty plea to second-degree murder under MCR 6.302(D).[9] Under that court rule, the trial court must establish a factual basis that "the defendant is guilty of the offense charged, or the offense to which the defendant is pleading." MCR 6.302(D)(1). A factual basis exists when "the fact-finder could have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding." *People v Fonville*, 291 Mich App 363, 377; 804 NW2d 878 (2011).

> A factual basis to support a plea exists if an inculpatory inference can be drawn from what the defendant has admitted. This holds true even if an exculpatory inference could also be drawn and the defendant asserts that the latter is the correct inference. Even if the defendant denies an element of the crime, the court may

---

[9] Defendant does not challenge his guilty plea to felony-firearm.

properly accept the plea if an inculpatory inference can still be drawn from what the defendant says. [*Id.* (quotation marks and citation omitted)]

More specifically, our Supreme Court has indicated that a "factual basis" is established when each element of a crime is shown on the record. See *Guilty Plea Cases*, 395 Mich at 128-129 (remanding two cases to the respective trial courts to allow the prosecution an opportunity to show "the missing element"). See also *People v Blue*, 178 Mich App 537, 539; 444 NW2d 226 (1989) ("Defendant's case can be likened to those guilty plea cases which have been remanded to allow the prosecution to show the missing element in order to establish a factual basis for the plea."). "Elements of crime" is defined as "the constituent parts of a crime that the prosecution must prove to sustain a conviction." *People v Lively*, 470 Mich 248, 258 n 11; 680 NW2d 878 (2004) (cleaned up).

Michigan courts have commonly recited the following four elements for second-degree murder: (1) death, (2) caused by the defendant, (3) with malice,[10] and (4) without justification or excuse. See, e.g., *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998) ("The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse."); *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015) ("The elements of second-degree murder are (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death.") (quotation marks and citation omitted). Other cases have simply referred to the fourth element as "without justification." See, e.g., *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003) ("[T]he elements of second-degree murder [are] (1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification.").

In this case, defendant does not dispute that the record of the plea hearing established that he shot and killed the decedent with the requisite state of mind for second-degree murder, thus eliciting sufficient facts on the first three elements of that offense identified in cases such as *Goecke*. However, as defendant correctly observes, he was never asked whether the shooting was unjustified or unexcused. The question before us is whether the failure to affirmatively establish that the shooting was not justified or excused, at least with respect to self-defense, constitutes a failure to establish an element of second-degree murder. To answer this question, we briefly consider the historical development of that offense.

Murder was a common-law offense. See *People v Couch*, 436 Mich 414, 417-418; 461 NW2d 683 (1990). However, that offense is now defined by statute. "Criminal homicide, or more

---

[10] " 'Malice' generally is defined in a criminal context as the intent, without justification or excuse, to commit a wrongful act, a reckless disregard of the law or of a person's legal rights, or ill will." *People v Rogers*, 338 Mich App 312, 331; 979 NW2d 747 (2021) (cleaned up). For second-degree murder, "[m]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998).

-10-

precisely murder and manslaughter, has been a statutory offense in Michigan since 1846, when the state's first Penal Code was enacted." *Id*. at 418.

MCL 750.316 specifically defines first-degree murder as murder occurring under certain circumstances. For example, MCL 750.316(1)(a) provides that first-degree murder includes "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.317 defines second-degree murder as follows: "All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same." In other words, as our Supreme Court has explained, "second-degree murder is defined residually as '(a)ll other kinds of murder.' " *People v Hoffmeister*, 394 Mich 155, 158; 229 NW2d 305 (1975), quoting MCL 750.317. "Second-degree murder evolved from common-law murder, under which 'malice aforethought' was understood for centuries to be the grand criterion distinguishing murder from less wicked homicides." *People v Baskerville*, 333 Mich App 276, 284-285; 963 NW2d 620 (2020) (some quotation marks and citation omitted).

The common law established various defenses to murder. Ordinarily, those defenses were, and are, known as "affirmative defenses." "An affirmative defense admits the crime but seeks to *excuse or justify* its commission. It does not negate specific elements of the crime." *People v Dupree*, 486 Mich 693, 704 n 11; 788 NW2d 399 (2010) (emphasis added). Common-law affirmative defenses to murder include, but are not limited to, insanity, *People v Evans*, 335 Mich App 76, 85; 966 NW2d 402 (2020), self-defense, *Dupree*, 486 Mich at 707, involuntary intoxication, *People v Caulley*, 197 Mich App 177, 188; 494 NW2d 853 (1992), and fleeing felon, *Couch*, 436 Mich at 420-421.[11] Other defenses to murder, such as the defense of accident, are not affirmative defenses because they actually negate an element of the offense. See *People v Propp*, 508 Mich 374, 382; 976 NW2d 1 (2021).

Then-existing common-law affirmative defenses to murder were adopted by our Legislature by enacting the homicide statutes in 1846. "Where a legislature borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Couch*, 436 Mich at 419 (cleaned up). Thus, for example, by enacting homicide statutes in 1846, "the Legislature is presumed to have accepted the then-existing common-law rule that any private person (and *a fortiori* a peace-officer) may arrest a fleeing felon and if they kill him, provided he cannot otherwise be taken, it is justifiable." *Id*. at 420 (cleaned up).

---

[11] We recognize that *Evans* discussed the affirmative defense of insanity to murder in the context of the insanity statute, and *Caulley* discussed the affirmative defense of involuntary intoxication to murder in the context of the insanity statute as well. However, it is well-established that both insanity and involuntary intoxication were affirmative defenses at common law. See *People v McRunels*, 237 Mich App 168, 172; 603 NW2d 95 (1999) (insanity); *Farmer v State*, 411 SW3d 901, 913 (Tex Crim App, 2013) (COCHRAN, J., concurring) (involuntary intoxication).

With these principles in mind, for the following five reasons, we conclude that the often-recited fourth element of second-degree murder, "without justification or excuse," actually is part of the "cluster of ideas" of second-degree murder. It is not an element of the offense of second-degree murder.[12]

First, "[a]t early common law, homicide was either justifiable, excusable, or felonious." *People v Wafer*, 509 Mich 31, 42; 983 NW2d 315 (2022). See also *Mendoza*, 468 Mich at 533 ("Common-law murder encompasses all killings done with malice aforethought and without justification or excuse."). While the nuanced common-law development of homicide and common-law murder is not particularly relevant for our purposes today, the term "without justification or excuse" is, in our view, simply a reiteration of the longtime understanding that a defendant cannot be guilty of second-degree murder when the homicide is justified or excused.

Second, the words "justification" and "excuse" suggest the legal definition of "affirmative defense." See *People v Pegenau*, 447 Mich 278, 319; 523 NW2d 325 (1994) (BOYLE, J.) ("[A]n affirmative defense in effect concedes the facial criminality of the conduct and presents a claim of justification or excuse . . . ."); *Dupree*, 486 Mich at 704 n 11 (quoting same). Moreover, "[a]n affirmative defense does not negate selected elements or facts of the crime." *People v Mette*, 243 Mich App 318, 329; 621 NW2d 713 (2000) (quotation marks and citations omitted). Because an affirmative defense admits that the elements of the crime are present, an affirmative defense—i.e., a justification or excuse—cannot itself be an element of the crime. For example, as this case illustrates, the assertion by defendant that he acted in self-defense is a concession that the elements of second-degree murder are satisfied. In other words, because an affirmative defense such as self-defense "admits the crime," *Dupree*, 486 Mich at 704 n 11, it is illogical to conclude that self-defense also establishes that the other elements of the crime did not occur.[13]

Third, the common formulation of the distinction between first- and second-degree murder is that "second-degree murder is first-degree murder minus premeditation" or the enumerated predicate felony. *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "Without justification or excuse" is not an element of first-degree murder under MCL 750.316. It seemingly follows that it cannot be an element of second-degree murder under MCL 750.317 because a contrary conclusion would add an element to second-degree murder that is not found in first-degree murder. In other words, if "without justification or excuse" is an element of second-

---

[12] Our conclusion in this regard does not necessarily diminish the importance of the "without justification or excuse" aspect of second-degree murder. "[W]here relevant, instructions regarding excuse, justification, or mitigation must be given along with the intent instructions in order to reduce the offense of murder to manslaughter, to show that the killing was accidental, or to show some justification such as self-defense." *People v Woods*, 416 Mich 581, 627; 331 NW2d 707 (1982).

[13] The common law ordinarily provided that the prosecution had the burden of disproving an affirmative defense beyond a reasonable doubt once the defendant raised a triable issue as to that affirmative defense. See, e.g., *Dupree*, 486 Mich at 709-710 (self-defense); *McRunels*, 237 Mich App at 172 (insanity); *People v Leffew*, 508 Mich 625, 644; 975 NW2d 896 (2022) (defense of others).

degree murder, there would be cases in which it would be easier to establish first-degree murder under MCL 750.316 as opposed to second-degree murder under MCL 750.317. This is contrary to principles of statutory interpretation. See *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 421; 565 NW2d 844 (1997) ("We will not judicially legislate by adding language to the statute.").

Fourth, the development in our caselaw of the "without justification or excuse" element is questionable. The first decision of our Supreme Court to identify the commonly recited four elements of second-degree murder occurred in *People v Bailey*, 451 Mich 657, 669; 549 NW2d 325 (1996), which stated that the elements of that offense were as follows:

> The elements of second-degree, or common-law, murder are "(1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *People v Dykhouse*, 418 Mich 488, 508-509, 345 NW2d 150 (1984).

The *Bailey* decision's quotation of *Dykhouse* is a quote from the dissent in that case where it also was explained, correctly in our view, that "unless the defendant introduces evidence that circumstances of justification, excuse, or mitigation exist, the prosecution, in order to obtain a conviction of murder in either degree, need not prove beyond a reasonable doubt the absence of those circumstances." *Dykhouse*, 418 Mich at 509 n 13 (CAVANAGH, J., *dissenting*). Thus, the origin of the "without justification or excuse" element in our Supreme Court's caselaw arises from a dissent which itself recognized that it is not an element of the statutory offense of second-degree murder that must be proven beyond a reasonable doubt when a defendant is charged with that crime.[14]

Fifth, we find persuasive the report and recommendation of the United States Magistrate Judge in *Walker v Skipper*, 2021 WL 4129451 (WD Mich, 2021).[15] In that case, the petitioner argued that his guilty plea to second-degree murder in the Michigan state court was invalid because he was not aware that "without justification or excuse" was an element of the offense, and that his

---

[14] The earliest decision of this Court identifying the "without justification or excuse" fourth element is *People v Hawkins*, 80 Mich App 481; 264 NW2d 33 (1978), overruled in part on other grounds by *People v Williams*, 422 Mich 381; 373 NW2d 567 (1985). *Hawkins* stated as follows: "To prove the defendant guilty of second-degree murder the prosecution must establish, beyond a reasonable doubt, the following: (1) that a death occurred, (2) which was caused by the defendant, (3) without justification or excuse and (4) with malice aforethought." *Hawkins*, 80 Mich App at 486 n 3. In support of that proposition, *Hawkins* cited MCL 750.317 and *People v Fountain*, 71 Mich App 491; 248 NW2d 589 (1976). However, neither MCL 750.317 nor *Fountain* stand for the proposition that "without justification or excuse" is an element of second-degree murder.

[15] The report and recommendation was adopted by the federal district judge "as the Opinion of the Court." *Walker v Skipper*, 2021 WL 4125382 (WD Mich, 2021).

shooting of the victim was justified or excused by the doctrines of self-defense and fleeing felon. *Id.* at 6. The state court denied relief. *Id.* The magistrate judge similarly concluded that relief was not warranted, stating that "[t]he state court's determination that 'without justification or excuse' is not an element of the crime of second-degree murder, such that Petitioner need not be aware of the 'element' to knowingly enter his plea, is axiomatically correct." *Id.* at 7. The magistrate judge observed that although some cases such as *Goecke* have indicated that "without justification or excuse" is an element of second-degree murder, other cases such as *Oros* have not identified that element of murder. *Id.* at 7-8. More importantly, the magistrate judge explained, affirmative defenses such as self-defense and fleeing felon do not "factually challenge that the criminal act took place," but rather, "simply claim[] that the otherwise criminal act was excused or justified under the law." *Id.* at 9. The magistrate judge suggested that the "without justification or excuse" element is better understood as part of "[t]he 'cluster of ideas' attached to murder," and ultimately determined that the state court was not required to advise the petitioner about potential affirmative defenses before accepting his plea. *Id.* at 7, 9-10. We find the magistrate judge's analysis persuasive.[16]

For these reasons, we conclude that "without justification or excuse" is not a true element of second-degree murder.[17] Instead, it is part of the "cluster of ideas" about the act of murder that our Legislature adopted in 1846 by enacting the homicide statutes.[18] Therefore, because "without

---

[16] "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019) (quotation marks and citations omitted).

[17] We believe that such a conclusion is compelled by common sense. We are unaware of any cases, murder or otherwise, in which a trial court, to validity accept a defendant's plea to an offense, must affirmatively establish the absence of all justifications or excuses recognized by law. Compare *In re Certified Question*, 425 Mich 457, 465-466; 390 NW2d 620 (1986), superseded by statute as stated in *Metrich v Lancaster*, 569 US 351; 133 S Ct 1781; 185 L Ed 2d 988 (2013) (explaining that sanity is not an element of rape or kidnapping because the "burden of going forward and establishing defendant's sanity beyond a reasonable doubt only arises following the defendant's introduction of evidence of insanity (i.e., affirmative defense), which is not true of the stated elements of an offense," and in contrast, "[t]he prosecution must prove the elements of a crime beyond a reasonable doubt even if the defendant does not introduce any evidence whatsoever"). In fact, MCR 6.302(B)(1) specifically provides that, when advising the defendant about the ramifications of his or her plea, "the court is not obliged to explain the elements of the offense, *or possible defenses*." (Emphasis added.)

[18] If our conclusion in this regard is incorrect, the model jury instruction governing second-degree murder, M Crim JI 16.5, must immediately be changed. That instruction provides that the jury need not be instructed on the element of "without justification or excuse" when "there is no evidence of justification or excuse, and the jury is not being instructed on manslaughter or any offense less than manslaughter." If "without justification or excuse" is an element of second-degree murder, then the instruction clearly violates due process because "due process requires the prosecution to prove every element beyond a reasonable doubt." *Oros*, 502 Mich at 240 n 3.

-14-

justification or excuse" is not an element of the offense at issue, the trial court was not required to establish a factual basis in that regard under MCR 6.302(D)(1).[19]

Accordingly, we conclude that the trial court did not violate MCR 6.302(B) or *Jaworski* when accepting defendant's guilty plea, and that the plea did not lack a sufficient factual basis under MCR 6.302(D).[20]

### D. *KILLEBREW*

Finally, defendant argues that the trial court erred by accepting his guilty plea because the trial court applied coercion in violation of *Killebrew*. According to defendant, the prosecution's statement at the plea hearing that it would seek an upward departure were defendant convicted of second-degree murder at trial essentially was a threat to induce his guilty plea, and the trial court's confirmation and endorsement of the prosecution's statement created a coercive environment contrary to *Killebrew*.[21] We disagree.

---

[19] Although we have not performed an exhaustive search, it appears that Michigan is an outlier by identifying "without justification or excuse" as an element of second-degree murder. See, e.g., *Mata-Medina v People*, 71 P3d 973, 978 (Colo, 2003); *People v Jeffries*, 164 Ill2d 104, 113-114; 646 NE2d 587 (1995); *Brown v State*, 270 Ind 177, 178; 383 NE2d 1029 (1978); *State v Charles*, 787 So2d 516, 518 (La Ct App, 2001); *Williams v State*, 251 Md App 523, 570; 254 A3d 556 (Md Ct App, 2021); *Commonwealth v Earle*, 458 Mass 341, 346; 937 NE2d 42 (2010); *State v Angulo*, 471 NW2d 570, 573 (Minn Ct App, 1991); *State v Powell*, 872 P2d 1027, 1032 (Utah, 1994).

In New Mexico, "[t]he elements of second-degree murder are: (1) Defendant killed another human being without lawful justification; and (2) Defendant knew that his acts created a strong probability of death or great bodily harm to another human being." *State v Mann*, 129 NM 600, 605; 11 P3d 564 (NM Ct App, 2000). However, the New Mexico Supreme Court has explained that, despite the fact that the pertinent statute "defines homicide as the killing of another human being 'without lawful justification or excuse,' " that aspect of the statute "does not create an element of the crime which must be proven by the prosecution." *State v Osborne*, 111 NM 654, 659; 808 P2d 624 (1991).

[20] Defendant argues that the trial court was required to negate self-defense on the record when accepting his guilty plea because he had previously identified that the shooting was an act of self-defense. We disagree. We are unable to identify anything in the record before the plea hearing establishing that defendant was claiming self-defense. Defendant cites to a June 2, 2016 pretrial hearing, during which he stated that "I'm sitting here stating that I'm not guilty based upon reasons of someone else came at me with a gun." However, this isolated, vague statement does not amount to a claim of self-defense.

[21] Defendant also briefly argues that the prosecution's statement violated due process because it threatened to punish him for exercising his constitutional right to a jury trial. See *People v Ryan*, 451 Mich 30, 45; 545 NW2d 612 (1996) ("It is a violation of due process to punish a person for asserting a protected statutory or constitutional right.").

In *Killebrew*, our Supreme Court recognized "that the defendant may be persuaded to surrender his valuable right to trial with its accompanying rights and procedural safeguards in exchange for concessions aimed at sentence reduction and certainty." *Killebrew*, 416 Mich at 200. However, when sentence bargaining occurs between the prosecution and the defendant, "judicial involvement in the procedure must be kept to a minimum to avoid a coercive effect on the defendant and loss of public confidence in the judicial system . . . ." *Id*. at 202. The Court continued:

> The problem of coercion arises from the disparate bargaining positions of the judge and the defendant: the judge wields the decisive sentencing power to which the defendant must submit. Should the trial judge exert or even seem to exert the authority of this position to induce the defendant to plead guilty, the voluntariness of the defendant's subsequent waiver of his right to a jury trial becomes questionable.

> * * *

> Nor can we fail to consider the subtle pressures that may be exercised by a judge against a defendant who rejects an opportunity, presented by such a response as the judge here proposes to make, the acceptance of which may relieve the judge of a lengthy trial. Any predilections of guilt that a judge might hold regarding a defendant must inevitably be reinforced by the knowledge that the defendant wishes to engage in plea bargaining discussions. While these factors inhere in all plea bargaining agreements, their effect on the voluntariness of the plea and the subsequent trial could only be greater where the judge is himself the active participant in constructing the terms of the rejected agreement.

> * * *

> Therefore, judicial participation must be limited in order to minimize the coercive effect of such participation on the defendant, to ensure the voluntariness of plea, and to preserve public confidence in the judicial system.

> * * *

> [W]e now hold that a trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement. He may not engage in the negotiation of the bargain itself. The trial judge's role in the plea-bargaining procedure shall remain that of a detached and neutral judicial official. [*Id*. at 202-205 (cleaned up).]

In this case, the prosecution stated at the plea hearing:

> If the defendant were to be actually found guilty of a lesser offense by a jury of second[-]degree murder, it would be my intention to seek an upper departure from the guideline range, and ask this Court to sentence the defendant to 30 to 60 years if he were to go to trial and be found guilty of the lesser of second[-]degree murder.

So I will be seeking an upper departure if he is found guilty of second[-]degree murder.

Shortly after the prosecution's statement, the trial court said, "The sentencing agreement I don't usually deviate from it. But if there is a guilty verdict after a jury trial, I can do an upward departure according to law."

As an initial matter, the prosecution's statement is consistent with its authority to engage in sentence negotiations, and particularly its authority to persuade a defendant to plead guilty in exchange for concessions regarding the charged offense and corresponding sentence. See *id*. at 199-200 (explaining that the prosecution "may agree with the defendant to bring reduced charges or to dismiss certain charges or cases altogether," and also "may present to the court a sentence agreement stating that the parties agree that a specifically designated sentence is the appropriate disposition of the case"). Defendant, in faulting the prosecution's statement, primarily cites two cases, both unrelated to guilty pleas and addressing due-process violations for vindictive prosecution, see *United States v Poole*, 407 F3d 767 (CA 6, 2005); *People v Ryan*, 451 Mich 30; 545 NW2d 612 (1996). But the defendant makes no argument here that the prosecution's action was unconstitutionally vindictive. We, therefore, turn our analysis to the primary error asserted, the trial court's alleged *Killebrew* violation.

Contrary to defendant's argument, the trial court did not create impermissible coercion as contemplated by *Killebrew*. The trial court never engaged in sentencing negotiations with defendant but, instead, accurately acknowledged its authority to impose an upward departure after trial. In fact, the trial court qualified its statement by noting that it "can do" an upward departure, not that it "would do" or "would be inclined to" impose an upward departure. Although one could construe the trial court's brief statement, if implying that defendant may be subject to a lighter sentence for pleading guilty, as "seem[ing] to exert the authority of [the court's] position to induce the defendant to plead guilty," *Killebrew*, 416 Mich at 202, this type of semantic differentiation—specifically, a defendant's ability to secure a reduced sentence by pleading guilty—reflects the precise value a defendant may gain in the plea-bargaining process as stated in *Killebrew*. Simply put, we cannot fault the trial court for informing defendant that he legally may be subject to a sentence of more than 20 years in prison for second-degree murder if he elects to proceed to trial.

More importantly, the trial court never initiated or participated in any negotiations for the plea agreement itself. Instead, the record is clear that the prosecution and defendant discussed the terms of the plea agreement before the plea hearing, that defendant discussed the matter off-the-record with his counsel during the plea hearing, and that after the discussion, he decided to enter into the plea agreement. Therefore, the trial court's isolated and accurate description of its sentencing authority did not violate *Killebrew*.

## IV. CONCLUSION

None of the arguments raised by defendant on appeal have any merit. Therefore, he has failed to establish entitlement to relief under MCR 6.508(D). We affirm.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra