*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRENT DEJON MIXON,

Defendant-Appellant.

UNPUBLISHED
January 22, 2026
1:05 PM

No. 371482
Wayne Circuit Court
LC No. 22-006500-01-FC

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 20 to 40 years' imprisonment for the second-degree murder conviction and two years' consecutive imprisonment for the felony-firearm conviction. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arose when defendant and the victim engaged in an argument on a Detroit street early one morning. The argument escalated, and defendant shot at the victim about six times, striking him multiple times, before fleeing. Neighbors were awakened by the gunshots and called the police. The victim was pronounced dead after the police arrived.

Later in the morning, defendant called his sister, Brittany Mixon, to pick him up. His sister and her boyfriend, Krestian Paulus, drove to defendant, who was at a park near the Detroit River. They returned to Brittany's home, where the defendant fell asleep. When defendant awoke, he disclosed to Paulus that he shot and killed a person, but claimed that the person had disrespected him. Defendant also told Paulus that he threw the gun into the Detroit River.

As part of their investigation, police collected home-surveillance videos of the area and were able to identify the defendant's car. They also collected surveillance video from a nearby gas station, which also showed defendant's car with the victim and an unidentified woman. Police arrested defendant but then released him due to a lack of evidence to charge him.

-1-

About a month after the shooting, Paulus came forward and disclosed to police that defendant told him that he had shot the victim. Paulus explained that he originally was hesitant about contacting the police because he was addicted to prescription medications. However, he voluntarily went to rehabilitation and decided that he needed to disclose what defendant had told him. Police then arrested defendant, and he was charged with the aforementioned crimes.

At trial, the victim's mother and girlfriend described defendant's relationship with the victim as close, noting that they were childhood friends. Neighbors testified that they heard an argument between two men before the shooting. Defendant provided his version of events, explaining that the victim attacked him first when defendant indicated that he did not want to return to a party. The victim choked him, which defendant claimed triggered his asthma and caused him to struggle breathing. The victim eventually released defendant but started to approach him again, and defendant then shot at the victim. The defendant said the victim continued to approach him, and defendant fired one last shot. Defendant admitted that he fled and disposed of the gun but claimed that he was panicked when he did so. The jury convicted defendant as charged.

At sentencing, the guidelines range provided for a minimum term of 12 to 20 years' imprisonment for second-degree murder. The trial court sentenced defendant to 20 to 40 years on the second-degree murder conviction and two consecutive years on the felony-firearm conviction. In doing so, the trial court stated that it considered: (1) the nature of the crimes, (2) the information in the presentence investigation report (PSIR), and (3) defendant's juvenile convictions. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction for second-degree murder. Defendant says that he should be acquitted because the prosecution failed to disprove self-defense beyond a reasonable doubt and failed to prove malice beyond a reasonable doubt. Alternatively, defendant believes that his second-degree murder conviction should be reduced to voluntary manslaughter. We disagree with defendant.

## A. STANDARD OF REVIEW

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "In examining the sufficiency of the evidence, 'this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012), quoting *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

## B. ANALYSIS

"A challenge to the sufficiency of evidence underpinning a conviction implicates due process. Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Darga*, 349 Mich App 1, 14; ___ NW3d ___ (2023) (quotation marks and citation omitted). Evidence is sufficient for a guilty verdict where " 'a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting

*People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428.

Historically, "Michigan courts have commonly recited the following four elements of second-degree murder: (1) death, (2) caused by the defendant, (3) with malice, and (4) without justification or excuse." *People v Spears*, 346 Mich App 494, 514; 13 NW3d 20 (2023) (footnote omitted). However, the "often-recited" fourth element of second-degree murder has been eliminated, with this Court explaining that element "actually is part of the 'cluster of ideas' of second-degree murder" and not an element of the offense. *Id*. at 517. " 'Malice' generally is defined in a criminal context as the intent, without justification or excuse, to commit a wrongful act, a reckless disregard of the law or of a person's legal rights, or ill will." *People v Rogers*, 338 Mich App 312, 331; 979 NW2d 747 (2021) (cleaned up). In the context of second-degree murder, "[m]alice may be established in three ways: by showing (1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022). "Or, . . . the third theory for proving malice can be shown by 'the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result.' " *Id*., quoting *People v Dykhouse*, 418 Mich 488, 495; 345 NW2d 150 (1984).

### 1. SELF-DEFENSE

Defendant contends that the prosecution failed to disprove his theory of self-defense beyond a reasonable doubt. Defendant argues that his version of events establishes that he honestly and reasonably believed that he was in imminent danger of death when he shot the victim. As such, once a defendant establishes an issue of self-defense and satisfies the initial burden of producing evidence to support his or her claim, the burden of proof shifts to the prosecution to exclude the possibility that the defendant acted in self-defense beyond a reasonable doubt. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010).[1]

Common-law self-defense is codified in MCL 780.972, which states, in relevant part:

---

[1] Self-defense is an affirmative defense that "justifies otherwise punishable criminal conduct, usually the killing of another person, 'if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself.' " *Id*. at 707, quoting *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002).

-3-

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

In this case, defendant testified that the victim attacked and choked him, which caused him to suffer an asthma attack. Defendant further testified that he felt threatened by the victim and shot the victim to defend himself. Therefore, defendant "inject[ed] the issue of self-defense and satisfie[d] the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist." *Dupree*, 486 Mich at 709-710. Accordingly, the burden shifted to the prosecution to disprove self-defense. *Id*.

The prosecution provided sufficient evidence from which a rational juror could conclude beyond a reasonable doubt that defendant did not act in self-defense. Paulus testified that defendant disclosed that he shot "somebody" because that person disrespected him and said that he disposed of the firearm in "the water" where the police would never find it. Paulus also described defendant as drunk when Paulus met him at the park and did not notice any injuries on defendant. This testimony contradicted defendant's claim at trial that he was choked by the victim. Moreover, when defendant disclosed the shooting to Paulus, he did not tell Paulus that he was choked or attacked. In addition, Paulus testified, after he discussed the matter with police, defendant told him over the phone that he would "kill" him. Simply put, the fact that defendant fled the scene of the shooting, promptly disposed of incriminating evidence, told an acquaintance that he shot "somebody" because that person disrespected him, and then threatened to kill that acquaintance after the acquaintance cooperated with the police, strongly suggests that defendant did not act in self-defense. The record shows that defendant did not honestly and reasonably believe that the use of deadly force against the victim was necessary. See MCL 780.972(1)(a).

Also, other witnesses testified that the victim was very close with defendant, and defendant agreed with the characterization when describing the victim as his "brother." Thus, it was reasonable for the jury to not believe that defendant felt fear for his life as he and the victim had a longstanding relationship. Instead, it is reasonable for the jury to conclude that defendant overreacted to a heated argument with the victim. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Accordingly, the prosecution presented sufficient evidence to rebut defendant's claim of self-defense.

## 2. MALICE AND VOLUNTARY MANSLAUGHTER

Defendant also contends that the prosecution failed to establish malice beyond a reasonable doubt, thus requiring that his conviction for second-degree murder be vacated or reduced to voluntary manslaughter. Again, malice may be established by showing that the defendant had: "(1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause

death or great bodily harm." *Gafken*, 510 Mich at 511. Malice also may be established by showing that the defendant had the intent to create a very high risk of death or great bodily harm and knew that death or great bodily harm was the probable result. *Id.*

Here, Paulus testified that defendant seemingly boasted about killing the victim because the victim disrespected him. Defendant also fired several times at the victim, indicating an intent to kill or to cause great bodily harm. The prosecution provided corroborating evidence for the number of shots with the report from the Shot Spotter, which showed six shots were fired. The Ring surveillance video also shows that multiple shots were fired, with a delay between the last two shots. Additionally, defendant admitted that he shot at the victim multiple times, with a delay between the last two shots. Given the number of gunshots, and Paulus's testimony about defendant claiming that the victim disrespected him, there is sufficient evidence to support a finding of malice, i.e., that defendant intended to kill or cause great bodily harm to the victim. See *People v Stanek*, 61 Mich App 573, 579; 233 NW2d 89 (1975) ("[T]he element of malice may be inferred from the type of weapon used and the manner in which the crime was committed.").

In summary, the prosecution submitted sufficient evidence to disprove defendant's claim of self-defense beyond a reasonable doubt and to prove defendant acted with malice beyond a reasonable doubt. Further, while defendant argues that he acted under "adequate provocation" sufficient to establish voluntary manslaughter, see *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003), that conclusion relies entirely upon accepting defendant's testimony as true. The jury had that opportunity and it rejected voluntary manslaughter when rendering its verdict. We defer to the jury's assessment of the evidence and the credibility of the competing witnesses, and we will not disturb its verdict. See *Kanaan*, 278 Mich App at 619.

As such, defendant is not entitled to a lesser conviction of voluntary manslaughter in lieu of second-degree murder.[2]

## III. DISPROPORTIONATE SENTENCE

Defendant argues that his sentence is disproportionate. Once again, we disagree.

## A. STANDARD OF REVIEW

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality, which

---

[2] We note that the prosecution provided sufficient evidence for the jury to find that defendant did not act in the heat of passion, and that there were lapses in time when defendant could have collected himself and stopped shooting at the victim. See *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023). Defendant himself admitted that he did not feel sufficiently threatened to shoot the victim while being choked, even if the alleged choking actually occurred. The prosecution also provided evidence establishing the delay between the last two shots, which suggests that defendant had an opportunity for reflection. Thus, the jury's conviction of second-degree murder, not voluntary manslaughter, was supported by the evidence.

requires that the sentence be proportional to the seriousness of the circumstances surrounding the offense and offender." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003). "We review de novo questions concerning statutory interpretation of the sentencing guidelines." *People v Butler*, 315 Mich App 546, 549; 892 NW2d 6 (2016).

## B.  ANALYSIS

"[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J). "A sentence that adheres to the guidelines' recommended range is reviewed for proportionality." *Id*. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Id*. at 360.  " 'In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021), quoting *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "The principles that guide proportional sentencing in our state are: '(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses.' " *People v Bennett*, 335 Mich App 409, 418; 966 NW2d 768 (2021), quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). "The trial court may consider all the record evidence when sentencing, including the contents of a presentence investigation report." *People v Armstrong*, 305 Mich App 230, 245; 851 NW2d 856 (2014).

Here, defendant's minimum sentencing guidelines range was 12 to 20 years' imprisonment for the second-degree murder conviction. Defendant was sentenced to a minimum of 20 years' imprisonment, which was at the upper end of the guidelines range. Because his minimum sentence was within the sentencing guidelines, his sentence is presumed proportional. *Posey*, 512 Mich at 360.  Therefore, defendant must demonstrate unusual circumstances rendering his presumptively proportional sentence disproportionate. *Burkett*, 337 Mich App at 637.

There is nothing in the record to establish that the 20-year minimum sentence imposed on defendant for second-degree murder is disproportionate. The trial court heard testimony that defendant killed the victim merely because the victim "disrespected" him. The victim's family appeared at sentencing and explained their loss. The trial court appropriately noted when imposing its sentence that the murder was "completely senseless and tragic." Given these facts, defendant has not shown that his 20-year minimum sentence, which was at the upper end of the guidelines range, is disproportionate for the murder offense which defendant committed.

Defendant argues the trial court improperly considered his juvenile convictions in violation of the 10-year gap rule.[3]  MCL 777.50(1) contains the 10-year gap rule and states:

---

[3] When imposing its sentence, the trial court briefly acknowledged the prosecution's earlier observation that defendant has a significant juvenile history that was not accounted for by the

In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.

For two reasons, the trial court did not violate the 10-year gap rule. First, the trial court did not assess points for PRVs 1 to 5 contrary to MCL 777.50(1), so the guidelines range was not improperly scored. Although the probation department assessed 25 points for OV 3, the parties agreed at sentencing that OV 3 should be assessed zero points, and the trial court made that change. Second, and more importantly, the trial court was permitted to consider facts not accounted for by the sentencing guidelines. See *People v Smith*, 482 Mich 292, 308-309; 754 NW2d 284 (2008). Thus, although defendant's juvenile history was not considered in the scoring of the sentencing guidelines themselves, the trial court was permitted to consider that history when imposing its ultimate sentence. See *id*. Indeed, it would arguably be illogical if the trial court was required to treat defendant as having essentially no significant juvenile history when, in reality, he has a fairly extensive juvenile history.

Accordingly, the trial court's 20-year minimum sentence was reasonable and proportionate, and the trial court did not abuse its discretion by imposing it.

IV. CONCLUSION

For the reasons stated above, we affirm.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

sentencing guidelines, stating that "it was noted Mr. Mixon does have a fairly extensive juvenile history that was not accounted for in the sentencing guidelines."